**THE LAW OFFICE OF MYCHAL WILSON**
Mychal Wilson SBN #236189
The Law Office of Mychal Wilson
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Telephone: (424) 252-4232
Facsimile: (310) 424-7116
E-mail: mw@mychalwilsonesq.com

FILED

2017 FEB 21  PM 1:43

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LAS ANGELES
BY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

and

THE STATES OF ARKANSAS,

CALIFORNIA, COLORADO,

CONNECTICUT, DELAWARE,

FLORIDA, GEORGIA, HAWAII,

ILLINOIS, INDIANA, IOWA,

LOUISIANA, MARYLAND,

MASSACHUSETTS, MICHIGAN,

MINNESOTA, MISSOURI,

MONTANA, NEVADA, NEW

**UNDER SEAL**

**CV17-01391** PSG (KSx)

CIVIL ACTION No.

_____

**COMPLAINT FOR DAMAGES**

**AND DEMAND FOR JURY TRIAL**

**TO BE FILED IN CAMERA AND**

**UNDER SEAL PURSUANT TO 31**

**U.S.C. § 3730 (b) (2)**

PAID

FEB 21 2017

Clerk, US District Court
COURT 6612

1

HAMPSHIRE, NEW JERSEY, NEW

MEXICO, NEW YORK, NORTH                    **DO NOT ENTER INTO PACER**

CAROLINA, OKLAHOMA, RHODE

ISLAND, TENNESSEE, TEXAS,                  **DO NOT PLACE IN PRESS BOX**

VERMONT, VIRGINIA,

WASHINGTON, AND THE DISTRICT

OF COLUMBIA

ex rel.

THE SAM JONES COMPANY, LLC,

                        Relator,

vs.


BIOTRONIK INC., CEDARS-SINAI

MEDICAL CENTER, and DR.

JEFFREY GOODMAN


Defendants.

**INTRODUCTION**

1.      Relator THE SAM JONES COMPANY, LLC is informed and believes, and thereon alleges the following Complaint against Biotronik Inc., Cedars-Sinai Medical Center, and Dr. Jeffrey Goodman ("Defendants").

2.      Defendants caused false claim submissions to government healthcare programs for implantable cardiac devices, and for surgical equipment and care associated with the use of those devices. The claims for payment are false because the devices are not legally marketed devices, but are illegally marketed due to payment of kickbacks through nepotism and illegal patient referral schemes. Such illegally marketed devices are precluded by law from serving as the basis of a legitimate claim for insurance or other payment.

3.      This action concerns false and fraudulent Medicare and Medicaid reimbursement claims for the surgical implantation of certain Defendants' medical devices (Subject Devices) that are illegally marketed under the federal Anti-Kickback Statute 42 U.S.C. § 1320a-7b, because they are marketed and sold in exchange for something of value, in this case illegal payments to family members.

4.      Commencing sometime from at least 2009 and continuing into the present, Defendants engaged in a fraudulent scheme that caused the Medicare and Medicaid Programs to pay unlawful claims for payment. In furtherance of this scheme, Defendants engaged in a scheme of illegal kickbacks through nepotism and illegal

patient referral schemes. Among other improper inducements, Defendants provided inappropriate payments to family members of physicians to implant their devices, and provided free professional marketing and referral development services for physicians who had the potential to create ROI for the company.

5.     Starting in at least 2009, and continuing up until present time, Defendants have defrauded Medicaid, Medicare, TriCare, and other public and private insurance payors by paying illegal inducements to Dr. Jeffrey Goodman through his younger brother, Biotronik sales representative Brian Goodman. From at least 2012 to present, Biotronik through their agent Brian Goodman has handsomely showered Dr. Gary Reznik of Los Angeles with gifts and trips to spas on nearly a weekly basis. This scheme was carried out to turn Dr. Reznik into a loyal referrer of patients to Defendant Dr. Jeffrey Goodman. These acts violate the Stark Law and the Anti-Kickback Statute because they represent a quid pro quo relationship in which Dr. Reznik was expected to continue to supply patient referrals in exchange for the inducements from Biotronik. On information and belief, these kickback schemes are carried out with other physicians nationally by Defendant Biotronik.

6.     Relator The Sam Jones Company, LLC also alleges violations by Defendants of the California Insurance Frauds Prevention Act ("CIFPA"), Cal. Ins.

Code § 1871, et seq.; and the Illinois Insurance Claims Fraud Prevention Act ("ILCFPA"), 740 Ill. Comp. Stat. § 92/1, et seq.

7.    Both California and Illinois have qui tam statutes that permit relators to raise allegations of fraud by individuals or entities against private insurance companies. The statutes operate similarly to the federal and state FCAs, and are written to prevent fraud occurring in the private health care insurance market.

8.    Upon information and belief, Defendants receives significant revenues from private insurers in California and Illinois.

9.    Upon information and belief, Defendants are paid by private insurers that cover California- and Illinois-based patients who have been referred for treatment as a result of Defendants' scheme.

10.    Upon information and belief, private healthcare insurance companies in California and Illinois require the same conditions of payment and prohibitions kickbacks and off-label marketing found in the Medicare and Medicaid programs.

11.    The CIFPA prohibits as unlawful the following:

> …It is unlawful to knowingly employ runners, cappers, steerers, or other persons...to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer.

5

12.     The Defendants' kickback scheme also violates Section 1871.7(a) of the CIFPA, Cal. Ins. Code 1871.7(a), and Section 92/5(a) of the ILCFPA 740 Ill. Comp. Stat. § 92/5(a). Defendants have entered into illegal arrangements with physicians that provide financial incentives for the use of their device implanting services, resulting in inappropriate claims submitted to private insurers.

13.     Ca. Ins. Code § 1871.7(a). Any person or entity found in violation of this section or specifically identified corollary criminal code sections is subject to civil penalties ranging from $5,000.00 to $10,000.00 per false claim plus three times the amount of each false claim for compensation from an insurer. Cal. Ins. Code § 1871.7(b).

14.     Under the CIFPA, any interested person may bring a sealed civil action for a violation of Section 187.7 on behalf of the State of California, Ca, Ins. Code § 1871.7(e)(1), (2). If the relator is ultimately successful and the District Attorney intervenes in the lawsuit, the relator is entitled to the recovery of fees, expenses, and a relator's share of between 30% and 40% according to the priority specified in the statute. Cal. Ins. Code § 1871.7(g)(1)(A)(iii)(I), (IV). If neither the District Attorney nor the Insurance Commissioner intervene and the relator is successful in settling his/her lawsuit or attaining final judgment, the relator may receive between 40% and 50% of the proceeds plus costs and expenses. Cal. Ins. Code § 1871.7(g)(2)(A).

15.     The Illinois Insurance Claims Fraud Prevention Act ("ILCFPA") is similar to the CIFPA. In Section 92/5(a), the ILCFPA prohibits kickbacks and states:

> ... [I]t is unlawful to knowingly offer or pay any remuneration directly or indirectly, in case or in kind, to induce any person to procure clients or patients to obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured person or the person's insurer.

16.     740 Ill. Comp. Stat. § 92/5(a). If a defendant is in violation of Section 92/5(a) or specifically identified corollary criminal code sections, he/she must reimburse three times the amount of money defrauded as well as civil penalties ranging from $5,000.00 to $10,000,00 per fraudulent claim. 740 Ill, Comp. Stat. § 92/5(b).

17.     Pursuant to Section 15 of the ILCFPA Section 15, an interested person may bring a sealed civil action for a violation of the ILCFPA on behalf of him/herself and the State of Illinois. 740 Ill. Comp, Stat. § 92/15(a), (b). If the State's Attorney and/or the Attorney General intervene in the *qui tam* action, and it is ultimately successful, the relator is entitled to at least 30% of the recovery. 740 Ill, Comp. State § 92/25(a). If neither government entity intervenes and the relator successfully pursues the lawsuit on his/her own, the relator is entitled to recover not less than 40% of the proceeds. 740 Ill. Comp. Stat. § 92/25(b).

18.     On behalf of the United States of America, the States of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, Washington, and the District of Columbia, Relators The Sam Jones Company LLC, file this qui tam complaint against Defendant Biotronik Inc., and allege as follows:

## PARTIES

19.     First relator member of The Sam Jones Company, LLC is a device sales representative who has worked in medical device sales since 1993. Relator worked as a sales representative in Los Angeles for Biotronik from 2008 to 2011, and again from 2014 to present promoting multiple Biotronik devices including those contained in this complaint.

20.     Second relator member of The Sam Jones Company, LLC is a device sales representative who has worked in medical device sales since 1999. Relator worked as a sales representative in Los Angeles for Biotronik from 2008 to 2014, promoting multiple Biotronik devices including those contained in this complaint.

21.     The Relators became aware of Defendants' false claim scheme alleged herein due to their positions as original source. The Relators commenced this *qui*

*tam* action against Defendants for the device products at issue based upon their personal experiences and industry insider information. Relators, as employees of Defendants, have had access to pricing, marketing and reimbursement information such as proprietary Defendant computer files revealing the marketing schemes, prices, and volume of sales by Defendants. Relators, as industry insiders, discovered that the devices at issue were reimbursed by Medicare and Medicaid for illegal marketing schemes. Relators directly witnessed and observed the Defendants' sale of the subject devices and their introduction into the stream of commerce. Relators were aware that Medicare and Medicaid intended to reimburse Defendants for devices based on a belief that the devices were legitimately marketed and that the devices were not encumbered by illegal Defendant kickbacks at the Government's expense.

22.    The facts averred in this Complaint are based entirely upon the personal observations of Relators and documents in their possession.

23.    Relators have provided or are providing to the United States Attorney and the Attorneys General of Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, Washington, and the District

of Columbia a full disclosure of substantially all material facts supporting this Complaint, as required by the False Claims Act, 31 U.S.C. § 3730(b)(2), and relevant state statutes.

24.     Biotronik is an Oregon Corporation with a principal place of business at 6024 Jean Road, Lake Oswego, Oregon 97035.

25.     Cedars-Sinai Medical Center is a California corporation with a principal place of business at 8700 Beverly Blvd, Los Angeles, CA 90048.

26.     Dr. Jeffrey Goodman, MD is a California physician with a principal place of business at 8631 W 3rd St #445, Los Angeles, CA 90048.

27.     Since 2009, Defendants have been co-conspirators and co-partners in the sales, distribution, and use of the subject devices and are thus jointly and severally liable for the acts described herein related to the false claims for these devices.

**JURISDICTION AND VENUE**

28.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331. This court has jurisdiction over the state law counts asserted in this Complaint under both 31 U.S.C. § 3732(b) and 28 U.S.C. § 1367, because the state claims arise from the same transaction or occurrence as the federal claims and

because these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

29.     At all times material to this Complaint, Defendants regularly conducted substantial business within the State of California, maintained permanent employees and offices in California, and made and are making significant sales within California. Defendants are thus subject to personal jurisdiction in California.

30.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this district, selling and promoting their devices to multiple doctors in this district.

## NATURE OF ACTION

31.     This is a qui tam action under 31 U.S.C. Sec. 3729, et seq. of the False Claims Act ("FCA") filed by the Relators in the name of the United States Government and themselves, to recover penalties and damages arising from Defendants' violations of federal requirements concerning contracts with agencies of the United States, specifically the Medicare, Medicaid and TriCare healthcare programs.  This is also a qui tam action under various state and local False Claims Acts, brought by the Relators on behalf of the States to recover damages and penalties arising from Defendants' violations of State laws.

11

32.     Defendants have engaged in a scheme of illegal kickbacks that included Defendants paying to induce or reward a person for purchasing, ordering, arranging for, or recommending the purchase of unapproved devices. Defendants have also engaged in a scheme of illegal kickbacks related to nepotism and illegal patient referral schemes, and other illegal kickbacks. This scheme of illegal kickbacks has therefore resulted in defrauding government healthcare programs, diverting these government funds to Defendants and their loyal customers.

33.     These acts constitute violations of the federal False Claims Act, 31 U.S.C. § 3729, et. seq., and numerous equivalent state and city statutes as set forth below. The FCA provides that any person who knowingly presents and/or causes to be presented to the United States a false or fraudulent claim for payment is liable for a civil penalty of up to $21,916.00 for each claim, plus three times the amount of the damages sustained by the Government. The FCA allows any person discovering a fraud perpetrated against the Government to bring an action for himself and for the Government and to share in any recovery.

34.     Relators seek to recover damages and civil penalties in the name of the United States and the States for the violations alleged herein. On information and belief, as set forth below, the damages and civil penalties that may be assessed against the Defendants under the facts alleged in this Complaint amount to at least hundreds of millions of dollars.

12

## DEFENDANTS' VIOLATIONS OF THE ANTI-KICKBACK STATUTE

35.   The Anti-Kickback Statute (AKS) prohibits any person or entity from knowingly and willfully offering, paying, soliciting, or receiving any remuneration, directly or indirectly, to induce or reward a person for, inter alia, purchasing, ordering, arranging for, or recommending the purchase or ordering of any goods or services for which payment may be made, in whole or in part, under a federal health program, including Medicare (see 42 U.S.C. § 1320a-7b). Furthermore, violations of the AKS are also subject to civil monetary penalties (see 42 U.S.C. § 1320a-7a)

36.   The AKS "seeks to ensure that referrals will be based on sound medical judgment and that providers will compete for business based on quality and convenience, instead of paying for ... [referrals]," OIG Advisory Op., No. 98- 16, November 3, 1998). The AKS is intended to prevent arrangements that can lead to the distortion of medical decision-making, overutilization of services and supplies, increased costs to Federal health care programs, and unfair competition.

37.   For the purposes of the AKS, remuneration includes the transfer of anything of value, "directly or indirectly, overtly or covertly, in cash or in kind" (see 42 U.S.C. § 1320a-7b(b)(l). The AKS has been interpreted to cover any arrangement where one purpose of the remuneration was to obtain money for the referral, item, or service, or to induce further referrals, or further purchase of items or services.

13

See, e.g., United States v. Borrasi, 639 F.3d 774 (7th Cir. 2011); United States v. McClatchey, 217 F.3d 823 (10th Cir. 2000); United States v. Davis, 132 F.3d 1092 (5th Cir. 1998); United States v. Kats, 871 F.2d 105 (9th Cir. 1989); United States v. Greber, 760 F.2d 68 (3d Cir. 1985), cert. denied, 474 U.S. 988 (1985), Cited in OIG Advisory Op., No. 13-07, June 24, 2013.

38.    As codified in the Patient Protection and Affordable Care Act of 2010, a claim for payment to a Federal Health Care Program that includes items or services resulting from a violation of The Anti-Kickback Statute (42 USC § 1320a-7b) constitutes a false or fraudulent claim for purposes of the False Claims Act. (See paragraph (g) of 42 U.S.C. § 1320a-7b).  Furthermore, in accordance with paragraph (f) of 42 U.S.C. § 1320a-7b, the term Federal Health Care Program means: (1) any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (other than the health insurance program under chapter 89 of title 5); or (2) any State health care program, as defined in [42 U.S.C. §] 1320a–7(h)].  This amendment to the AKS clarifies "that all claims resulting from illegal kickbacks are considered false claims for purposes of civil action under the False Claims Act" (see 155 Cong. Rec. S10854, statement of Senator Leahy).

14

39.     In addition to manufacturing, marketing, selling, and licensing to sell illegally marketed devices, as more fully alleged herein, Defendants also engaged in a widespread and pervasive scheme of illegal kickbacks via nepotism and illegal patient referral schemes to boost sales of their illegally marketed devices resulting in unjust enrichment. Among other improper inducements, Defendants provided inappropriate commissions for family members of physicians to implant devices; and provided free professional marketing and referral development services for physicians who had the potential to create ROI for the company.

40.     Defendants use illegal kickbacks and quid pro quo arrangements to ensure that physicians would increase their use of Biotronik's devices, ensuring that charges would be made to publicly funded insurance programs and to state funded and NIH funded programs. None of these incentives have anything to do with true scientific or medical research or with the safety of patients.

41.     Defendants use illegal kickbacks and quid pro quo arrangements to induce physicians to cause the purchasing, leasing, ordering and use, or arranging for or recommending purchasing, leasing, or ordering and use, of Defendants' devices for which payment may be made in whole or in part under Government Health Care Programs.

42.     Defendants funnel illegal payments to physicians to encourage them to implant Biotronik devices through direct payments or by payments to their family

members. For example, in the case of Dr. Jeffrey Goodman of Los Angeles, Biotronik paid for his brother Brian Goodman to be the commission-earning sales representative on six hundred and thirty-five (635) implants between December, 2009 and February, 2017, at a total device value of $5,007,745.00, and an unknown additional value for hospital charges, surgeon charges, and ancillary and follow-up charges.

43.     Such conduct was specifically a violation of Biotronik corporate policy, the policy of Cedars-Sinai Medical Center in Beverly Hills, CA where the implant surgeries were performed by Dr. Jeffrey Goodman, and were a violation of the Anti-Kickback statute.

44.     Biotronik's Code of Business conduct specifically stated that sales representatives should not sell "to a spouse or other immediate family member (e.g. sales rep selling to an implanting physician they are married or related to)." The Cedars-Sinai Health System Corporate Integrity Program stated that "Section 1877 of the Social Security Act, commonly known as the Stark Act (Stark), prohibits physicians from referring Medicare and Medicaid patients to a healthcare provider for certain 'designated health services' (DHS), which include inpatient and outpatient hospital services, whenever a physician, or physician's family member, has a financial relationship with that provider. A financial relationship is any ownership interest or compensation arrangement."

16

45.    In fact, Cedars-Sinai required that all medical device company sales

representatives complete special training on the hospital's Corporate Integrity

Program prior to being credentialed to sell or service devices in the hospital.

46.    Section 1877 of the Social Security Act, the Stark Law, is a limitation on

physician referrals, prohibiting referrals for Medicaid and Medicare patients if the

physician or an immediate family member has a financial relationship with that

entity (42 U.S.C. 1395nn).

47.    Starting in at least 2009, and continuing up until present time, Defendants

have each individually and collectively conspired to defraud Medicaid, Medicare,

TriCare, and other public and private insurance payors by paying illegal

inducements to Dr. Jeffrey Goodman through his brother, Biotronik sales

representative Brian Goodman.

48.    Initially in 2009, Brian Goodman was not allowed by Defendants to

participate in cases operated on by his brother, Dr. Jeffrey Goodman while at

Cedars-Sinai Medical Center. However, beginning in 2009 or earlier, Defendants

each individually and collectively decided to take all Biotronik implant business at

Cedars-Sinai Medical Center away from lawfully contracted sales representatives,

and give the vast majority of implant surgeries to Brian Goodman. Because

Biotronik paid commissions on each device implanted, the payments to Brian

Goodman served as an inducement to the family of Dr. Jeffrey Goodman to

17

increase his use of and his loyalty toward Biotronik for its implantable cardiac devices.

49.     In fact, after that time, Dr. Goodman's use of Biotronik devices increased dramatically, from sixty-one (61) implanted devices per year in 2008-2009, up to eighty-nine (89) implanted devices in 2013, and continuing to increase to one hundred and twenty-two (122) implanted devices in 2014, one hundred and eighteen (118) implanted devices in 2015, and one hundred seventy-one (171) implanted devices in 2016. The dramatic increase in use began after his brother Brian Goodman began getting paid commissions starting in 2009.

50.     For example, from December 2009 to present, Dr. Goodman has implanted Biotronik devices worth over $5 million dollars on the following dates at Cedars-Sinai Medical Center, in which the commissions were paid to his brother Brian Goodman, and in which Dr. Goodman and Cedars-Sinai Medical Center submitted false claims for the devices, for the surgeries, and for the associated hospitalization and physician fees to the government:

| Date | Dollar Amount of Implant |
|---|---|
| December 13, 2009 | 4,500.00 |
| February 19, 2010 | 20,000.00 |
| November 3, 2010 | 20,000.00 |
| November 10, 2010 | 4,500.00 |
| November 22, 2010 | 4,500.00 |
| November 29, 2010 | 4,500.00 |

| Date | Dollar Amount of Implant |
|---|---|
| December 9, 2010 | 4,500.00 |
| January 5, 2011 | 3,700.00 |
| January 6, 2011 | 4,500.00 |
| January 27, 2011 | 4,500.00 |
| February 3, 2011 | 20,000.00 |
| February 10, 2011 | 4,500.00 |
| February 14, 2011 | 23,000.00 |
| February 17, 2011 | 4,500.00 |
| February 21, 2011 | 20,000.00 |
| March 3, 2011 | 4,500.00 |
| March 7, 2011 | 4,500.00 |
| March 10, 2011 | 4,500.00 |
| March 14, 2011 | 4,500.00 |
| March 24, 2011 | 4,500.00 |
| March 24, 2011 | 4,500.00 |
| March 31, 2011 | 4,500.00 |
| April 19, 2011 | 3,700.00 |
| April 20, 2011 | 4,500.00 |
| May 4, 2011 | 4,500.00 |
| May 5, 2011 | 4,500.00 |
| May 10, 2011 | 4,500.00 |
| May 12, 2011 | 4,500.00 |
| May 18, 2011 | 4,500.00 |
| June 1, 2011 | 3,700.00 |
| June 6, 2011 | 4,500.00 |
| June 6, 2011 | 4,500.00 |

| Date | Dollar Amount of Implant |
|------|--------------------------|
| June 24, 2011 | 4,500.00 |
| June 30, 2011 | 3,700.00 |
| June 30, 2011 | 20,000.00 |
| July 7, 2011 | 4,500.00 |
| July 14, 2011 | 4,500.00 |
| July 27, 2011 | 4,500.00 |
| July 28, 2011 | 4,500.00 |
| August 25, 2011 | 4,500.00 |
| August 26, 2011 | 4,500.00 |
| September 1, 2011 | 4,500.00 |
| September 1, 2011 | 4,500.00 |
| September 22, 2011 | 4,500.00 |
| October 5, 2011 | 25,000.00 |
| October 10, 2011 | 4,500.00 |
| October 12, 2011 | 3,700.00 |
| October 20, 2011 | 23,000.00 |
| November 3, 2011 | 4,500.00 |
| November 3, 2011 | 4,500.00 |
| November 10, 2011 | 4,500.00 |
| November 17, 2011 | 4,500.00 |
| November 17, 2011 | 25,000.00 |
| December 1, 2011 | 4,500.00 |
| December 14, 2011 | 4,500.00 |
| December 14, 2011 | 23,000.00 |
| December 19, 2011 | 25,000.00 |
| December 22, 2011 | 4,500.00 |

20

| Date | Dollar Amount of Implant |
|------|--------------------------|
| January 4, 2012 | 25,000.00 |
| January 12, 2012 | 4,500.00 |
| January 12, 2012 | 30,500.00 |
| February 2, 2012 | 3,700.00 |
| February 9, 2012 | 4,500.00 |
| February 13, 2012 | 4,500.00 |
| February 23, 2012 | 3,700.00 |
| March 5, 2012 | 4500.00 |
| March 8, 2012 | 4,500.00 |
| March 15, 2012 | 4,500.00 |
| March 15, 2012 | 4,500.00 |
| March 22, 2012 | 4,500.00 |
| March 22, 2012 | 4,500.00 |
| March 26, 2012 | 4,500.00 |
| April 2, 2012 | 3,700.00 |
| April 11, 2012 | 4,500.00 |
| April 12, 2012 | 3,700.00 |
| April 19, 2012 | 4,500.00 |
| April 26, 2012 | 28,000.00 |
| May 3, 2012 | 25,000.00 |
| May 9, 2012 | 4,500.00 |
| May 9, 2012 | 4,500.00 |
| May 14, 2012 | 3,200.00 |
| May 16, 2012 | 3,900.00 |
| May 24, 2012 | 3,900.00 |
| May 30, 2012 | 3,900.00 |

21

| **Date** | **Dollar Amount of Implant** |
|---|---|
| May 31, 2012 | 4,500.00 |
| May 31, 2012 | 4,500.00 |
| July 5, 2012 | 3,900.00 |
| July 5, 2012 | 3,900.00 |
| July 7, 2012 | 3,900.00 |
| July 12, 2012 | 3,900.00 |
| July 13, 2012 | 3,200.00 |
| July 19, 2012 | 3,900.00 |
| July 26, 2012 | 3,900.00 |
| July 26, 2012 | 3,900.00 |
| August 2, 2012 | 18,000.00 |
| August 2, 2012 | 17,500.00 |
| August 9, 2021 | 17500.00 |
| August 13, 2012 | 3,900.00 |
| August 16, 2012 | 3,900.00 |
| August 23, 2012 | 17,500.00 |
| September 6, 2012 | 3,900.00 |
| September 20, 2012 | 14,000.00 |
| September 27, 2012 | 3,900.00 |
| October 4, 2012 | 3,200.00 |
| October 4, 2012 | 3,900.00 |
| October 4, 2012 | 3,900.00 |
| October 11, 2012 | 3,900.00 |
| October 11, 2012 | 3,900.00 |
| October 16, 2012 | 3,900.00 |
| October 25, 2012 | 3,200.00 |

| Date | Dollar Amount of Implant |
|---|---|
| November 1, 2012 | 3,900.00 |
| November 8, 2012 | 3,900.00 |
| November 8, 2012 | 3,900.00 |
| November 15, 2012 | 23,000.00 |
| November 19, 2012 | 3,900.00 |
| November 26, 2012 | 17,500.00 |
| November 29, 2012 | 3,900.00 |
| December 20, 2012 | 17,500.00 |
| January 2, 2013 | 17,500.00 |
| January 10, 2013 | 19,500.00 |
| January 11, 2013 | 3,900.00 |
| January 14, 2013 | 3,900.00 |
| January 17, 2013 | 17,500.00 |
| January 21, 2013 | 3,200.00 |
| January 31, 2013 | 3,900.00 |
| January 31, 2013 | 3,900.00 |
| February 4, 2013 | 21,500.00 |
| February 7, 2013 | 3,900.00 |
| February 12, 2013 | 17,500.00 |
| February 21, 2013 | 3,900.00 |
| February 21, 2013 | 18,000.00 |
| February 25, 2013 | 3,900.00 |
| February 28, 2013 | 3,900.00 |
| February 28, 2013 | 3,900.00 |
| February 28, 2013 | 3,900.00 |
| March 4, 2013 | 3,900.00 |

| Date | Dollar Amount of Implant |
|------|--------------------------|
| March 7, 2013 | 3,900.00 |
| March 7, 2013 | 17,500.00 |
| March 7, 2013 | 18,000.00 |
| March 14, 2013 | 3,200.00 |
| March 14, 2013 | 3,900.00 |
| March 28, 2013 | 14,000.00 |
| April 18, 2013 | 3,900.00 |
| April 18, 2013 | 21,500.00 |
| April 22, 2013 | 17,500.00 |
| April 25, 2013 | 3,200.00 |
| May 9, 2013 | 3,900.00 |
| May 9, 2013 | 3,900.00 |
| May 9, 2013 | 3,900.00 |
| May 15, 2013 | 23,000.00 |
| May 20, 2013 | 3,900.00 |
| May 23, 2013 | 14,000.00 |
| May 26, 2013 | 17,500.00 |
| June 6, 2013 | 3,900.00 |
| June 10, 2013 | 3,900.00 |
| June 14, 2013 | 23,000.00 |
| June 20, 2013 | 3,900.00 |
| June 26, 2013 | 3,900.00 |
| June 27, 2013 | 17,500.00 |
| July 10, 2013 | 3,900.00 |
| July 17, 2013 | 3,900.00 |
| July 18, 2013 | 3,900.00 |

24

| Date | Dollar Amount of Implant |
|---|---|
| July 22, 2013 | 3,900.00 |
| July 26, 2013 | 3,900.00 |
| August 1, 2013 | 3,900.00 |
| August 5, 2013 | 3,900.00 |
| August 5, 2013 | 3,900.00 |
| August 8, 2013 | 19,500.00 |
| August 22, 2013 | 3,900.00 |
| August 22, 2013 | 3,900.00 |
| September 11, 2013 | 3,900.00 |
| September 12, 2013 | 14,000.00 |
| September 12, 2013 | 16,250.00 |
| September 16, 2013 | 3,900.00 |
| September 19, 2013 | 3,500.00 |
| September 19, 2013 | 3,900.00 |
| September 24, 2013 | 3,900.00 |
| September 25, 2013 | 3,900.00 |
| October 2, 2013 | 3,900.00 |
| October 10, 2013 | 3,900.00 |
| October 10, 2013 | 17,500.00 |
| October 14, 2013 | 3,900.00 |
| October 17, 2013 | 14,000.00 |
| October 17, 2013 | 16,250.00 |
| October 17, 2013 | 17,500.00 |
| October 23, 2013 | 3,900.00 |
| October 24, 2013 | 3,900.00 |
| October 24, 2013 | 3,900.00 |

| Date | Dollar Amount of Implant |
|---|---|
| October 28, 2013 | 3,900.00 |
| October 31, 2013 | 3,900.00 |
| November 8, 2013 | 3,900.00 |
| November 14, 2013 | 3,900.00 |
| November 25, 2013 | 3,900.00 |
| December 5, 2013 | 3,900.00 |
| December 5, 2013 | 3,900.00 |
| December 5, 2013 | 16,250.00 |
| December 12, 2013 | 17,500.00 |
| December 12, 2013 | 17,500.00 |
| December 13, 2013 | 3,900.00 |
| December 19, 2013 | 3,900.00 |
| December 20, 2013 | 3,900.00 |
| December 23, 2013 | 16,250.00 |
| December 23, 2013 | 23,000.00 |
| December 27, 2013 | 3,900.00 |
| December 27, 2013 | 3,900.00 |
| December 30, 2013 | 3,900.00 |
| January 8, 2014 | 23,000.00 |
| January 16, 2014 | 3,900.00 |
| January 16, 2014 | 3,900.00 |
| January 16, 2014 | 3,900.00 |
| January 20, 2014 | 3,900.00 |
| January 22, 2014 | 3,500.00 |
| January 23, 2014 | 3,900.00 |
| January 29, 2014 | 3,900.00 |

| Date | Dollar Amount of Implant |
|---|---|
| January 30, 2014 | 3,900.00 |
| February 5, 2014 | 17,500.00 |
| February 6, 2014 | 3,900.00 |
| February 13, 2014 | 17,500.00 |
| February 16, 2014 | 3,900.00 |
| February 20, 2014 | 3,900.00 |
| February 24, 2014 | 3,200.00 |
| February 27, 2014 | 3,200.00 |
| March 5, 2014 | 3,900.00 |
| March 6, 2014 | 3,900.00 |
| March 6, 2014 | 3,900.00 |
| March 12, 2014 | 11,500.00 |
| March 13, 2014 | 3,900.00 |
| March 13, 2014 | 3,900.00 |
| March 13, 2014 | 16,250.00 |
| March 13, 2014 | 19,500.00 |
| March 19, 2014 | 3,900.00 |
| March 20, 2014 | 18,000.00 |
| March 27, 2014 | 3,900.00 |
| March 27, 2014 | 3,900.00 |
| April 3, 2014 | 3,200.00 |
| April 10, 2014 | 3,900.00 |
| April 10, 2014 | 3,900.00 |
| April 10, 2014 | 3,900.00 |
| April 17, 2014 | 16,250.00 |
| April 17, 2014 | 17,500.00 |

| Date | Dollar Amount of Implant |
|---|---|
| April 24, 2014 | 3,900.00 |
| April 24, 2014 | 3,900.00 |
| April 30, 2014 | 3,900.00 |
| May 1, 2014 | 3,900.00 |
| May 1, 2014 | 3,900.00 |
| May 5, 2014 | 3,900.00 |
| May 5, 2014 | 3,900.00 |
| May 8, 2014 | 3,900.00 |
| May 8, 2014 | 3,900.00 |
| May 8, 2014 | 16,250.00 |
| May 15, 2014 | 17,500.00 |
| May 19, 2014 | 3,900.00 |
| May 29, 2014 | 17,500.00 |
| June 5, 2014 | 3,200.00 |
| June 5, 2014 | 3,200.00 |
| June 5, 2014 | 3,900.00 |
| June 10, 2014 | 3,900.00 |
| June 16, 2014 | 3,900.00 |
| June 16, 2014 | 3,900.00 |
| June 16, 2014 | 4,800.00 |
| June 19, 2014 | 14,000.00 |
| June 25, 2014 | 3,900.00 |
| June 26, 2014 | 16,250.00 |
| June 30, 2014 | 3,900.00 |
| July 14, 2014 | 3,900.00 |
| July 16, 2014 | 3,900.00 |

| Date | Dollar Amount of Implant |
|---|---|
| July 17, 2014 | 3,900.00 |
| July 18, 2014 | 3,900.00 |
| July 31, 2014 | 3,900.00 |
| August 7, 2014 | 3,900.00 |
| August 7, 2014 | 3,900.00 |
| August 7, 2014 | 23,000.00 |
| August 11, 2014 | 16,250.00 |
| August 12, 2014 | 3,900.00 |
| August 14, 2014 | 16,250.00 |
| August 21, 2014 | 3,900.00 |
| August 21, 2014 | 3,900.00 |
| August 22, 2014 | 3,900.00 |
| August 28, 2014 | 3,200.00 |
| August 28, 2014 | 3,900.00 |
| August 28, 2014 | 3,900.00 |
| September 4, 2014 | 3,900.00 |
| September 8, 2014 | 5,300.00 |
| September 11, 2014 | 3,900.00 |
| September 11, 2014 | 3,900.00 |
| September 11, 2014 | 5,300.00 |
| September 12, 2014 | 3,900.00 |
| September 15, 2014 | 3,900.00 |
| October 2, 2014 | 3,900.00 |
| October 2, 2014 | 5,256.00 |
| October 8, 2014 | 5,256.00 |
| October 10, 2014 | 18,000.00 |

| Date | Dollar Amount of Implant |
|------|--------------------------|
| October 16, 2014 | 3,705.00 |
| October 16, 2014 | 5,256.00 |
| October 16, 2014 | 13,300.00 |
| October 23, 2014 | 3,705.00 |
| October 24, 2014 | 3,705.00 |
| October 24, 2014 | 5,256.00 |
| October 24, 2014 | 17,100.00 |
| October 27, 2014 | 3,705.00 |
| October 30, 2014 | 16,625.00 |
| November 4, 2014 | 3,705.00 |
| November 4, 2014 | 15,438.00 |
| November 12, 2014 | 3,705.00 |
| November 12, 2014 | 13,300.00 |
| November 14, 2014 | 5,256.00 |
| November 14, 2014 | 16,625.00 |
| November 20, 2014 | 5,256.00 |
| November 20, 2014 | 5,256.00 |
| November 20, 2014 | 5,256.00 |
| November 20, 2014 | 5,256.00 |
| November 26, 2014 | 5,256.00 |
| November 26, 2014 | 5,256.00 |
| December 1, 2014 | 5,256.00 |
| December 4, 2014 | 21,850.00 |
| December 9, 2014 | 3,325.00 |
| December 11, 2014 | 3,705.00 |
| December 11, 2014 | 3,705.00 |

| Date | Dollar Amount of Implant |
|------|--------------------------|
| December 11, 2014 | 21,850.00 |
| December 15, 2014 | 5,256.00 |
| December 17, 2014 | 17,100.00 |
| December 18, 2014 | 20,425.00 |
| December 22, 2014 | 3,705.00 |
| December 22, 2014 | 3,705.00 |
| December 29, 2014 | 5,256.00 |
| January 8, 2015 | 5,256.00 |
| January 8, 2015 | 16,625.00 |
| January 15, 2015 | 3,040.00 |
| January 15, 2015 | 5,256.00 |
| January 15, 2015 | 21,850.00 |
| January 19, 2015 | 5,256.00 |
| January 19, 2015 | 5,256.00 |
| January 21, 2015 | 4,128.00 |
| January 22, 2015 | 21,850.00 |
| January 29, 2015 | 5,256.00 |
| February 5, 2015 | 5,256.00 |
| February 12, 2015 | 4,400.00 |
| February 14, 2015 | 5,256.00 |
| February 19, 2015 | 3,705.00 |
| February 19, 2015 | 5,256.00 |
| February 19, 2015 | 5,256.00 |
| February 26, 2015 | 3,325.00 |
| February 26, 2015 | 5,256.00 |
| February 26, 2015 | 16,625.00 |

| Date | Dollar Amount of Implant |
|---|---|
| March 2, 2015 | 5,256.00 |
| March 4, 2015 | 5,265.00 |
| March 5, 2015 | 3,040.00 |
| March 5, 2015 | 5,256.00 |
| March 11, 2015 | 5,256.00 |
| March 12, 2015 | 3,705.00 |
| March 19, 2015 | 3,705.00 |
| March 19, 2015 | 16,625.00 |
| March 26, 2015 | 5,256.00 |
| March 26, 2015 | 16,625.00 |
| April 2, 2015 | 4,128.00 |
| April 2, 2015 | 5,256.00 |
| April 9, 2015 | 3,705.00 |
| April 9, 2015 | 3,705.00 |
| April 9, 2015 | 21,850.00 |
| April 16, 2015 | 18,525.00 |
| April 20, 2015 | 3,705.00 |
| April 20, 2015 | 5,256.00 |
| April 20, 2015 | 5,256.00 |
| April 23, 2015 | 3,705.00 |
| April 23, 2015 | 4,128.00 |
| May 7, 2015 | 3,705.00 |
| May 7, 2015 | 16,625.00 |
| May 8, 2015 | 4,128.00 |
| May 14, 2015 | 3,705.00 |
| May 14, 2015 | 5,256.00 |

| Date | Dollar Amount of Implant |
|------|--------------------------|
| May 14, 2015 | 21,850.00 |
| May 21, 2015 | 3,705.00 |
| May 21, 2015 | 21,850.00 |
| May 28, 2015 | 5,256.00 |
| May 28, 2015 | 21,850.00 |
| May 28, 2015 | 21,850.00 |
| June 4, 2015 | 3,705.00 |
| June 11, 2015 | 5,256.00 |
| June 11, 2015 | 22,705.00 |
| June 11, 2015 | 22,705.00 |
| June 17, 2015 | 3,325.00 |
| June 18, 2015 | 13,300.00 |
| June 18, 2015 | 17,100.00 |
| July 2, 2015 | 16,625.00 |
| July 2, 2015 | 17,100.00 |
| July 9, 2015 | 3,040.00 |
| July 9, 2015 | 5,256.00 |
| July 9, 2015 | 5,256.00 |
| August 6, 2015 | 3,040.00 |
| August 10, 2015 | 3,705.00 |
| August 12, 2015 | 5,256.00 |
| August 12, 2015 | 5,256.00 |
| August 17, 2015 | 3,705.00 |
| August 17, 2015 | 5,256.00 |
| August 20, 2015 | 5,256.00 |
| August 20, 2015 | 17,100.00 |

| Date | Dollar Amount of Implant |
|---|---|
| August 20, 2015 | 22,705.00 |
| August 23, 2015 | 5,256.00 |
| August 24, 2015 | 3,040.00 |
| August 24, 2015 | 5,256.00 |
| August 24, 2015 | 16,625.00 |
| August 26, 2015 | 3,325.00 |
| August 27, 2015 | 3,325.00 |
| August 27, 2015 | 3,705.00 |
| August 27, 2015 | 5,256.00 |
| August 27, 2015 | 22,705.00 |
| August 27, 2015 | 22,705.00 |
| August 31, 2015 | 20,425.00 |
| September 2, 2015 | 5,256.00 |
| September 3, 2015 | 3,705.00 |
| September 3, 2015 | 3,705.00 |
| September 10, 2015 | 21,280.00 |
| September 17, 2015 | 22,705.00 |
| September 24, 2015 | 3,705.00 |
| September 24, 2015 | 22,705.00 |
| October 1, 2015 | 20,805.00 |
| October 15, 2015 | 4,328.00 |
| October 15, 2015 | 4,756.00 |
| October 15, 2015 | 5,456.00 |
| October 15, 2015 | 22,705.00 |
| October 26, 2015 | 3,705.00 |
| October 29, 2015 | 3,325.00 |

34

| Date | Dollar Amount of Implant |
|------|--------------------------|
| October 29, 2015 | 3,705.00 |
| October 29, 2015 | 5,456.00 |
| October 29, 2015 | 22,705.00 |
| November 12, 2015 | 3,705.00 |
| November 12, 2015 | 3,705.00 |
| November 13, 2015 | 3,705.00 |
| November 18, 2015 | 3,705.00 |
| November 19, 2015 | 3,705.00 |
| November 19, 2015 | 13,300.00 |
| November 19, 2015 | 16,825.00 |
| November 30, 2015 | 24,130.00 |
| December 3, 2015 | 3,325.00 |
| December 3, 2015 | 3,705.00 |
| December 10, 2015 | 3,705.00 |
| December 17, 2015 | 4,328.00 |
| December 17, 2015 | 22,705.00 |
| December 21, 2015 | 3,705.00 |
| December 24, 2015 | 3,705.00 |
| December 29, 2015 | 3,705.00 |
| December 29, 2015 | 5,456.00 |
| December 30, 2015 | 3,325.00 |
| January 7, 2016 | 3,705.00 |
| January 7, 2016 | 3,705.00 |
| January 7, 2016 | 17,100.00 |
| January 7, 2016 | 22,705.00 |
| January 14, 2016 | 3,705.00 |

| Date | Dollar Amount of Implant |
|---|---|
| January 14, 2016 | 3,705.00 |
| January 14, 2016 | 4,180.00 |
| January 15, 2016 | 855.00 |
| January 15, 2016 | 15,638.00 |
| January 19, 2016 | 4,328.00 |
| January 21, 2016 | 3,705.00 |
| January 21, 2016 | 4,180.00 |
| January 28, 2016 | 3,705.00 |
| January 28, 2016 | 3,705.00 |
| January 28, 2016 | 3,705.00 |
| January 28, 2016 | 22,705.00 |
| February 3, 2016 | 3,705.00 |
| February 3, 2016 | 17,100.00 |
| February 4, 2016 | 17,100.00 |
| February 4, 2016 | 22,705.00 |
| February 11, 2016 | 3,705.00 |
| February 11, 2016 | 3,705.00 |
| February 11, 2016 | 3,705.00 |
| February 15, 2016 | 5,456.00 |
| February 19, 2016 | 5,456.00 |
| February 24, 2016 | 4,328.00 |
| February 25, 2016 | 3,705.00 |
| March 3, 2016 | 3,705.00 |
| March 3, 2016 | 3,705.00 |
| March 3, 2016 | 4,328.00 |
| March 7, 2016 | 3,705.00 |

| Date | Dollar Amount of Implant |
|---|---|
| March 7, 2016 | 3,705.00 |
| March 10, 2016 | 4,180.00 |
| March 10, 2016 | 5,456.00 |
| March 11, 2016 | 3,705.00 |
| March 11, 2016 | 5,456.00 |
| March 17, 2016 | 855.00 |
| March 17, 2016 | 3,705.00 |
| March 17, 2016 | 22,705.00 |
| March 18, 2016 | 5,456.00 |
| March 21, 2016 | 3,705.00 |
| March 24, 2016 | 3,705.00 |
| March 24, 2016 | 22,705.00 |
| March 25, 2016 | 3,705.00 |
| March 31, 2016 | 3,325.00 |
| March 31, 2016 | 3,705.00 |
| March 31, 2016 | 3,705.00 |
| March 31, 2016 | 4,328.00 |
| March 31, 2016 | 11,125.00 |
| March 31, 2016 | 16,825.00 |
| April 7, 2016 | 3,705.00 |
| April 28, 2016 | 17,100.00 |
| April 29, 2016 | 16,825.00 |
| May 3, 2016 | 5,456.00 |
| May 4, 2016 | 5,456.00 |
| May 5, 2016 | 5,456.00 |
| May 5, 2016 | 22,705.00 |

| Date | Dollar Amount of Implant |
|------|--------------------------|
| May 12, 2016 | 855.00 |
| May 12, 2016 | 8,455.00 |
| May 12, 2016 | 13,500.00 |
| May 16, 2016 | 3,325.00 |
| May 16, 2016 | 5,456.00 |
| May 19, 2016 | 3,705.00 |
| May 19, 2016 | 13,500.00 |
| May 19, 2016 | 15,638.00 |
| May 23, 2016 | 5,456.00 |
| May 26, 2016 | 3,705.00 |
| May 26, 2016 | 5,456.00 |
| May 27, 2016 | 3,705.00 |
| May 31, 2016 | 4,328.00 |
| June 2, 2016 | 3,705.00 |
| June 2, 2016 | 4,180.00 |
| June 2, 2016 | 5,456.00 |
| June 2, 2016 | 5,884.00 |
| June 3, 2016 | 4,328.00 |
| June 6, 2016 | 5,456.00 |
| June 9, 2016 | 3,705.00 |
| June 9, 2016 | 4,180.00 |
| June 13, 2016 | 3,705.00 |
| June 16, 2016 | 3,325.00 |
| June 16, 2016 | 3,705.00 |
| June 16, 2016 | 3,705.00 |
| June 16, 2016 | 4,180.00 |

| Date | Dollar Amount of Implant |
|------|--------------------------|
| June 16, 2016 | 22,705.00 |
| June 29, 2016 | 3,705.00 |
| June 30, 2016 | 855.00 |
| June 30, 2016 | 4,328.00 |
| June 30, 2016 | 5,456.00 |
| June 30, 2016 | 17,100.00 |
| July 1, 2016 | 5,456.00 |
| July 6, 2016 | 5,456.00 |
| July 6, 2016 | 5,456.00 |
| July 7, 2016 | 17,253.00 |
| July 13, 2016 | 3,040.00 |
| July 14, 2016 | 3,705.00 |
| July 14, 2016 | 5,456.00 |
| July 14, 2016 | 20,853.00 |
| July 20, 2016 | 5,456.00 |
| July 27, 2016 | 3,705.00 |
| July 27, 2016 | 5,456.00 |
| July 28, 2016 | 3,325.00 |
| July 28, 2016 | 3,705.00 |
| July 28, 2016 | 21,280.00 |
| August 2, 2016 | 5,456.00 |
| August 11, 2016 | 3,325.00 |
| August 11, 2016 | 4,328.00 |
| August 11, 2016 | 4,328.00 |
| August 11, 2016 | 17,100.00 |
| August 15, 2016 | 5,456.00 |

| Date | Dollar Amount of Implant |
|---|---|
| August 17, 2016 | 14,450.00 |
| August 22, 2016 | 5,456.00 |
| August 24, 2016 | 4,328.00 |
| August 24, 2016 | 5,456.00 |
| August 25, 2016 | 3,325.00 |
| August 25, 2016 | 21,280.00 |
| August 30, 2016 | 5,456.00 |
| August 31, 2016 | 3,325.00 |
| August 31, 2016 | 5,456.00 |
| August 31, 2016 | 17,753.00 |
| September 1, 2016 | 5,456.00 |
| September 1, 2016 | 5,456.00 |
| September 1, 2016 | 19,380.00 |
| September 8, 2016 | 3,705.00 |
| September 8, 2016 | 5,456.00 |
| September 8, 2016 | 5,456.00 |
| September 8, 2016 | 16,825.00 |
| September 9, 2016 | 5,456.00 |
| September 14, 2016 | 17,100.00 |
| September 15, 2016 | 3,705.00 |
| September 15, 2016 | 16,825.00 |
| September 16, 2016 | 5,456.00 |
| September 16, 2016 | 5,456.00 |
| September 22, 2016 | 855.00 |
| September 22, 2016 | 3,705.00 |
| September 22, 2016 | 4,328.00 |

| Date | Dollar Amount of Implant |
|---|---|
| September 22, 2016 | 5,456.00 |
| September 26, 2016 | 5,456.00 |
| September 28, 2016 | 5,456.00 |
| September 29, 2016 | 5,456.00 |
| September 30, 2016 | 5,456.00 |
| October 11, 2016 | 4,328.00 |
| October 13, 2016 | 3,705.00 |
| October 13, 2016 | 23,828.00 |
| October 20, 2016 | 23,570.00 |
| October 24, 2016 | 5,090.00 |
| October 26, 2016 | 16,600.00 |
| October 28, 2016 | 5,090.00 |
| November 1, 2016 | 3,400.00 |
| November 3, 2016 | 3,400.00 |
| November 3, 2016 | 9,040.00 |
| November 8, 2016 | 23,570.00 |
| November 10, 2016 | 20,250.00 |
| November 10, 2016 | 23,570.00 |
| November 10, 2016 | 3,400.00 |
| November 10, 2016 | 17,495.00 |
| November 17, 2016 | 3,400.00 |
| November 30, 2016 | 18,575.00 |
| December 1, 2016 | 6,175.00 |
| December 1, 2016 | 5,090.00 |
| December 1, 2016 | 5,090.00 |
| December 2, 2016 | 5,090.00 |

| Date | Dollar Amount of Implant |
|---|---|
| December 8, 2016 | 3,995.00 |
| December 8, 2016 | 5,090.00 |
| December 8, 2016 | 22,920.00 |
| December 8, 2016 | 17,495.00 |
| December 9, 2016 | 5,090.00 |
| December 12, 2016 | 5,090.00 |
| December 15, 2016 | 3,400.00 |
| December 15, 2016 | 12,000.00 |
| December 22, 2016 | 650.00 |
| December 23, 2016 | 5,090.00 |
| January 5, 2017 | 2,800.00 |
| January 5, 2017 | 20,250.00 |
| January 5, 2017 | 5,090.00 |
| January 5, 2017 | 3,995.00 |
| January 9, 2017 | 3,995.00 |
| January 13, 2017 | 5,090.00 |
| January 16, 2017 | 5,090.00 |
| January 19, 2017 | 17,495.00 |
| January 19, 2017 | 5,090.00 |
| January 23, 2017 | 3,995.00 |
| January 25, 2017 | 5,090.00 |
| January 26, 2017 | 5,090.00 |
| January 26, 2017 | 650.00 |
| January 27, 2017 | 5,090.00 |
| February 2, 2017 | 5,090.00 |
| February 2, 2017 | 5,090.00 |

42

| Date | Dollar Amount of Implant |
|------|--------------------------|
| February 2, 2017 | 5,090.00 |
| February 2, 2017 | 17,495.00 |
| February 6, 2017 | 5,090.00 |
| February 9, 2017 | 5,090.00 |
| February 9, 2017 | 5,090.00 |
| **Total:** | **$5,007,745.00** |

51.     On original source information known by the relators, these nepotism kickback schemes are carried out with other physicians nationally by Defendant Biotronik. Additionally, Biotronik has paid for Dr. Goodman and Brian Goodman to travel together to other states such as New York multiple times in furtherance of this scheme.

52.     Defendants also funnel illegal payments to physicians to encourage them to implant Biotronik devices through direct payments or by inviting them to receive expensive referral development programs. Under this guise, Biotronik recruits physicians to dinners or conferences or entertainment and pays the expenses for them and their local physician referral sources to be entertained at expensive dinners or on paid excursions to induce them to give up to one hundred percent (100%) of their pacemaker and cardiac implant patients to the implanting physicians that use Biotronik devices. Under the guise that Biotronik was acting as "co-marketers," Biotronik sales reps sold these events to implanting cardiac

surgeons as free business development, or to expand their network of referring physicians to significantly increase their own income. At these activities, Biotronik would give these referral physicians highly valuable inducements specifically related to their personal hobbies and interests to help induce their loyal referral of their patients for Biotronik implants.

53.     Under the guise that Defendants were acting as "co-marketers," Defendants' sales force promoted these referral marketing events to cardiac surgeons who would implant Defendants' devices as free business development, or to expand their network of referring physicians, to significantly increase the income of these cardiac surgeons. At these events, presentations related to Defendants' devices were given to referring physicians to induce referrals for implantation of Defendants' devices.

54.     For example, from at least 2012 to present, Biotronik through their agent Brian Goodman has showered Dr. Gary Reznik of Los Angeles with gifts of vodka and trips to Hollywood Russian spas on a weekly basis. This scheme was carried out to turn Dr. Reznik into a loyal referrer of patients to Defendant Dr. Jeffrey Goodman.

55.     This marketing scheme has been quite successful as records show from 2012-present, Dr. Goodman has implanted at least forty-seven (47) patients with a Biotronik cardiac devices  who were referred by Dr. Reznik.

44

56.     These "referral development" and "co-marketing" activities were an illegal inducement to both the referring doctor, and to the implanting surgeon, because in many instances there was no equitable commitment of resources from the cardiac surgeon whose services Biotronik was promoting to his or her referral sources.

57.     Payment for "referral development programs" and the provision of travel, meals, entertainment and other inducements to increase referrals to a physician for the use of Biotronik Cardiac devices is inappropriate and illegal. For example, per the federal Health and Human Services Office of the Inspector General (HHS OIG), paid meals would be inappropriate if they are tied directly or indirectly to the generation of federal health care program business for the manufacturer, or for the purposeful inducement of business.  See, e.g., 68 F.R. 2378 "these arrangements potentially implicate the anti-kickback statute if any one purpose of the arrangement is to generate business."

58.     "Referral Development Programs" were offered as a free service for physicians, clinics and hospitals who agreed to implant Biotronik devices. These Referral Development Programs are professional marketing programs designed by marketing professionals to assist clinics and hospitals to build and maintain referral relationships with other doctors. Essentially, Referral Development Programs are designed to "grow the market" of patients coming to the clinic and involve a series of expensive services. These services include but are not limited to the following:

45

Analyzing a clinic's current referral trends, creating networking and marketing opportunities for the clinic's physicians to meet with their referral physicians, and sending marketing representatives into the field to do one-on-one direct marketing with a clinic's referring physicians.

59.     Biotronik offered its Referral Development Programs for free to their customers who agreed to implant Biotronik's cardiac devices by using in-house Biotronik sales representatives to do the referral development work (quid pro quo). Biotronik personnel went into the cardiac surgery field to offer the same expensive dinner programs, free travel, and other perks that were being offered to implanting physicians to their referral physicians who would promise to refer their cardiac patients for Biotronik implants.

60.     Several professional marketing companies offer fee for service Referral Development Programs for clinics and hospitals. These professional marketing companies quote general dollar figures ranging from approximately $1,000 per month to do arms-length referral contacting up to $60,000 to $70,000 in startup data acquisition costs averaging plus up to an additional $5,000 per month.

61.     However, these Referral Development Program figures are conservative compared to the fraudulent Defendants' conduct in supporting its loyal implanters by "rounding up" their referral physician partners for expensive dinners and paid travel. Furthermore, even at these conservative rates, a two-year program of

46

referral development could cost a clinic at least $24,000 to $108,000 dollars which results in a tremendously valuable illegal inducement for Biotronik's loyal implanting partners. Unfortunately, a very large percentage of the additional revenue to pay for this egregious form of illegal inducement conduct was going to originate from government healthcare payors such as Medicare.

62.     On information and belief, these nepotism and referral generation kickback schemes are carried out with other physicians nationally by Defendant Biotronik.

**DEFENDANTS HAVE CAUSED AND ARE CAUSING FALSE CLAIMS TO**
**BE SUBMITTED FOR REIMBURSEMENT TO THE UNITED STATES**
**AND THE STATES**

63.     Illegally marketed devices are not eligible to be purchased by Medicare, Medicaid or any other health insurance program funded by the United States.  At all relevant times, Defendants have been aware that the federal government was the ultimate purchaser of the numerous Subject Devices. Defendants knew the United States routinely paid hospitals for Subject Devices with labeling bearing the marks "Corox OTW-L 85-BP", "Corox OTW-S 85-BP", "Eluna 8 DR-T ProMRI", "Eluna 8 SR-T ProMRI", "Entovis DR-T ProMRI", "Entovis SR-T ProMRI", "Etrinsa 8 DR-T", "Evia DR-T," "Evia SR-T," "Ilesto 7 DR-T DF-1", "Ilesto 7 DR-T DF4", "Ilesto 7 HF-T DF-1", "Ilesto 7 VR-T DX DF-1", "Ilesto DR-T w/Cellular GSM HM", "Iperia 7 DR-T DF4 ProMRI", "Itrevia 7 HF-T DF-1",

47

"Itrevia 7 DR-T DF4", "Itrevia 7 HF-T DF4", "Itrevia 7 HF-T QP DF4 IS4", "Itrevia 7 VR-T DX", "Linox Smart S 65", "Linox Smart S DX 65/15", "Linox Smart SD 65/16", "Linox Smart S DX 65/17", "Linox Smart SD 65/18", "Lumax 740 DR-T", "Lumax 740 HF-T", "Lumax 740 VR-T DX", "Protego S 65", "Setrox S 53", "Setrox S 60", "Solia S 45", "Solia S 53", and "Solia S 60".

64.     Thus, Defendants knew that Medicare would receive numerous claims for reimbursement for their misbranded products. Defendants were also aware that Medicare and all other federally funded programs were not supposed to pay for illegally marketed products.   Consequently, every claim presented to Medicare (or any other health care program financed by the federal government) for Subject Devices for which the Defendants paid illegal inducements for was a false claim, and each claim was knowingly caused by Defendants.

65.     Each of these statements were used by the Defendants to market or distribute the Subject Devices were false and resulted in claims for the use of the devices being submitted to Medicare, Medicaid and other federal payment programs.

66.     As a result of the Defendants' actions, thousands of false claims relating the Subject Devices, including unnecessary surgical procedures and office visits, have been presented and paid by the United States. This has resulted in the United States expending millions of dollars for false Medicare, Medicaid, and federal insurance claims that should have never been paid.

48

## CONCLUSION

67.     Defendants' fraudulent activities, as set forth in this Complaint have resulted in significant fraud on the government's health care systems. These concerted, national schemes for fraudulent promotion of Defendants' devices have resulted in millions of dollars in unnecessary and fraudulent claims for reimbursement increasing the cost of healthcare and wasting the American taxpayer dollar.

## COUNT I; FALSE CLAIMS ACT

## CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(l)(A))

68.     This is a civil action by the Plaintiff, UNITED STATES, and the Relator, THE SAM JONES COMPANY, LLC, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: BIOTRONIK INC., CEDARS-SINAI MEDICAL CENTER, and DR. JEFFREY GOODMAN, under the False Claims Act, 31 U.S.C. §§3729-32.

69.     Relator realleges and incorporates the allegations above as if fully set for herein and further alleges as follows:

70.     The DEFENDANTS, from at least January 1, 2009 to the present date knowingly [as defined in 31 USC, §3729(b)] caused to be presented to officers or employees of the UNITED STATES GOVERNMENT and STATES

49

GOVERNMENTS false or fraudulent claims for payment or approval, in that the DEFENDANTS, caused to be presented to officers or employees of the UNITED STATES GOVERNMENT AND STATES GOVERNMENTS false or fraudulent claims for the specified devices (as the term "specified devices" has been defined throughout this Complaint) and caused the UNITED STATES and STATE GOVERNMENTS to pay out sums of money to the healthcare providers and suppliers of the DEFENDANTS' specified devices, grossly in excess of the amounts permitted by law, resulting in great financial loss to the UNITED STATES and STATE GOVERNMENTS.

71.    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in amount to be proven at trial, all in violation of 31 U.S.C. §3729(a)(1).

## COUNT II; FALSE CLAIMS ACT

**CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY THE GOVERNMENT**

72.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, THE SAM JONES COMPANY, LLC, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: BIOTRONIK INC., CEDARS-

50

SINAI MEDICAL CENTER, and DR. JEFFREY GOODMAN, under the False

Claims Act, 31 U.S.C. §§3729-32.

73.     Relator realleges and incorporates the allegations above as if fully set for

herein and further alleges as follows:

74.     The DEFENDANTS, from At least January 1, 2009 to the present date

knowingly [as defined in 31 USC, §3729(b)] caused false records or statements to

be made or used to get false or fraudulent claims to be paid or approved by the

GOVERNMENT, in that the DEFENDANTS, caused false information about the

DEFENDANTS' devices specified herein to be used by the GOVERNMENT to

pay or approve claims presented by healthcare providers and suppliers of the

DEFENDANTS' specified devices, which claims were grossly in excess of the

amounts permitted by law, resulting in great financial loss to the UNITED

STATES and STATE GOVERNMENTS.

75.     Because of the DEFENDANTS' conduct as set forth in this Count, the

UNITED STATES suffered actual damages in excess of Five Million Dollars

($5,000,000.00), all in violation of 31 U.S.C. §3729(a)(1).

## COUNT III; FALSE CLAIMS ACT

### CAUSING FALSE RECORDS OR STATEMENT TO BE USED TO CONCEAL AN OBLIGATION TO PAY MONEY TO THE GOVERNMENT

76.    This is a civil action by the Plaintiff, UNITED STATES, and the Relator, THE SAM JONES COMPANY, LLC, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: BIOTRONIK INC., CEDARS-SINAI MEDICAL CENTER, and DR. JEFFREY GOODMAN, under the False Claims Act, 31 U.S.C. §§3729-32.

77.    Relator realleges and incorporates the allegations above as if fully set for herein and further alleges as follows:

78.    The DEFENDANTS, from at least January 1, 2009 to the present date knowingly [as defined in 31 USC, §3729(b)] caused false records or statements to be made or used to conceal obligations to pay money to the GOVERNMENT, in that: the DEFENDANTS knowingly made, used or caused to be made or used false records or false statements, i.e., the false certifications made or caused to be made by Defendants material to an obligation to pay or transmit money to the Government or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

79.    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Five Million Dollars ($5,000,000.00), all in violation of 31 U.S.C. §3729(a)(1).

**COUNT IV; FALSE CLAIMS ACT**

**CAUSING PRESENTATION OF FALSE OR FRAUDULENT CLAIMS;**

**ILLEGAL RENUMERATION**

80.     This is a civil action by the Plaintiff, UNITED STATES, and the Relator, THE SAM JONES COMPANY, LLC, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: BIOTRONIK INC., CEDARS-SINAI MEDICAL CENTER, and DR. JEFFREY GOODMAN, under the False Claims Act, 31 U.S.C. §§3729-32.

81.     Relator realleges and incorporates the allegations above as if fully set for herein and further alleges as follows:

82.     The DEFENDANTS, from at least 2009 to the present date have knowingly offered or paid, or caused to be offered or paid, directly or indirectly, overtly or covertly, in cash or in kind, remuneration to their customers to induce them to purchase, order or arrange or to recommend purchasing, arranging or ordering the specified devices for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such financial inducement is specifically prohibited by 42 U.S.C. §1320a-7b(b) and 18 U.S.C.§2.

83.     The DEFENDANTS' knowing and willful actions in arranging for their customers to receive remuneration prohibited by 42 U.S.C. §1320a-7b(b), in causing the omission of material information from the claims, and in causing the failure to properly disclose and appropriately reflect the remuneration in the

claims, caused the claims for the specified devices to be false and fraudulent

claims and caused the claims to be presented to the States' Medicaid Programs for

payment and approval in violation of 31 U.S.C. §3729(a)(1).

84.     Because of the DEFENDANTS' conduct as set forth in this Count, the

UNITED STATES suffered actual damages in excess of Five Million Dollars

($5,000,000.00), all in violation of 31 U.S.C. §3729(a)(1).

## COUNT V; FALSE CLAIMS ACT

## CAUSING A FALSE RECORD OR STATEMENT TO BE MADE OR USED

## TO GET A FALSE OR FRAUDULENT CLAIM PAID OR APPROVED BY

## THE GOVERNMENT; PROHIBITED REFERRALS, CLAIMS AND

## COMPENSATION ARRANGEMENTS

85.     This is a civil action by the Plaintiff, UNITED STATES, and the Relator,

THE SAM JONES COMPANY, LLC, on behalf of the UNITED STATES and on

behalf of the Relator, against the Defendants: BIOTRONIK INC., CEDARS-

SINAI MEDICAL CENTER, and DR. JEFFREY GOODMAN, under the False

Claims Act, 31 U.S.C. §§3729-32.

86.     Relator realleges and incorporates the allegations above as if fully set for

herein and further alleges as follows:

87.     The DEFENDANTS, from at least 2009 to the present date knowingly

presented or caused to be presented, prohibited claims or bills to individuals and

other entities for designated health services furnished pursuant to prohibited referrals from physicians, physician groups and/or outpatient clinics with which the DEFENDANTS has financial relationships, for which the DEFENDANTS knew that payment would be made, in whole or in part, by the States' Medicaid Programs. Such prohibited referrals, claims bills and compensation arrangements are specifically prohibited by 42 U.S.C. §1395nn(a)(1)(B) and 18 U.S.C. §2.

88.    The DEFENDANTS' knowingly made or used or caused referring physicians, physician groups or outpatient clinics to make or use records or statements to get false or fraudulent claims and bills for the DEFENDANTS' devices to be paid or approved by Medicare or the States' Medicaid Programs.

89.    The DEFENDANTS' knowing presentment or causing others to present, claims or bills to the States' Medicaid programs in violation of 42 U.S.C. §1395nn(a)(1)(B) without disclosing facts revealing said violations constituted the making or using, or the causing others to make or use, false records or statements to get a false or fraudulent claims paid or approved by the GOVERNMENT in violation of 31 U.S.C. §3729(a)(2).

90.    Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Five Million Dollars ($5,000,000.00), all in violation of 31 U.S.C. §3729(a)(2).

**COUNT VI; FALSE CLAIMS ACT**

## CONSPIRING TO DEFRAUD THE GOVERNMENT BY GETTING A
## FALSE OR FRAUDULENT CLAIM ALLOWED OR PAID

91.     This is a civil action by the Plaintiff, UNITED STATES, and the Relator, THE SAM JONES COMPANY, LLC, on behalf of the UNITED STATES and on behalf of the Relator, against the Defendants: BIOTRONIK INC., CEDARS-SINAI MEDICAL CENTER, and DR. JEFFREY GOODMAN, under the False Claims Act, 31 U.S.C. §§3729-32.

92.     Relator realleges and incorporates the allegations above as if fully set for herein and further alleges as follows:

93.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein DEFENDANTS engaged in a conspiracy with physicians and facilities that made or presented false or fraudulent claims and performed one or more acts to effect payment of false or fraudulent claims.

94.     Because of the DEFENDANTS' conduct as set forth in this Count, the UNITED STATES suffered actual damages in excess of Five Million Dollars ($5,000,000.00), all in violation of 31 U.S.C. §3729(a)(3).

## COUNT VIII

### (Arkansas Medicaid Fraud False Claims Act, A.C.A. § 20-77-901 *et seq.*)

95.     Relator re-alleges and incorporates by reference each of the paragraphs above as if fully set forth herein and further alleges as follows.

96.     Additionally, Relator states that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Arkansas. Upon information and belief, Defendants' actions described herein occurred in the State of Arkansas as well. This is a qui tam action brought by Relator and the State of Arkansas to recover treble damages and civil penalties under the Arkansas Medicaid Fraud False Claims Act, A.C.A. § 20-77-901 et seq.

97.     The Arkansas Medicaid Fraud False Claims Act § 20-77-902 provides liability for any person who-

98.     Knowingly makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under the Arkansas Medicaid program;

99.     At any time knowingly makes or causes to be made any false     statement or representation of a material fact for use in determining rights to a benefit or payment;

100.    In addition, A.C.A. § 20-77-902(7)(A) prohibits soliciting, accepting, or agreeing to accept any type of remuneration for recommending the purchase, lease, or order of any good, facility, service, or item for which payment may be made under the Arkansas Medicaid program.

57

101.   Defendants violated the Arkansas Medicaid Fraud False Claims Act §20-77-902(1) (2) & (7)(A) from at least 2001 to the present by engaging in the fraudulent and illegal practices described herein.

102.   Defendants furthermore violated the Arkansas Medicaid Fraud False Claims Act § 20-77-902(1) & (2) and knowingly caused thousands of false claims to be made, used and presented to the State of Arkansas from at least 2009 to the present by its violation of federal and state laws, including A.C.A. § 20-77-902(7)(A), the Anti-Kickback Act and Stark Act Requirements, as described    herein.

103.   The State of Arkansas, by and through the Arkansas Medicaid program and other State health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

104.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Arkansas is connection with Defendants' fraudulent and illegal practices.

105.   Had the State of Arkansas known that Defendants was violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

58

106.   As a result of Defendants' violations of § 20-77-902(1) (2) & (7)(A), the State of Arkansas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

107.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, and brought this action pursuant to A.C.A. § 20-77-911(a) on behalf of themselves and the State of Arkansas.

108.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Arkansas in the operation of its Medicaid program.

109.   Pursuant to the Arkansas Medicaid Fraud False Claims Act, the State  of Arkansas and Relator are entitled to the following damages as against  Defendants:

110.   To the STATE OF ARKANSAS:

111.   Three times the amount of actual damages which the State of Arkansas has sustained as a result of Defendants' fraudulent and illegal practices;

112.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Arkansas;

113.   Prejudgment interest; and

114.   All costs incurred in bringing this action.

115.   To RELATOR:

59

116.   The maximum amount allowed pursuant to A.C.A. § 20-77-911(a) and /or any other applicable provision of law;

117.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

118.   An award of reasonable attorneys' fees and costs; and

119.   Such further relief as this court deems equitable and just.

## COUNT XIX

### (California False Claims Act, Cal. Gov't Code § 12650 *et seq.*)

120.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

121.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of California. Upon information and belief, Defendants' actions described herein occurred in the State of California as well.

122.   This is a qui tam action brought by Relator and the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code § 12650 *et seq*.

123.   Cal. Gov't Code § 12651(a) provides liability for any person who—

124.   Knowingly presents, or causes to be presented, to an officer or employee of the state of any political division thereof, a false claim for payment or approval;

125.   Knowingly makes, uses, or causes to be made or used a false record of statement to get a false claim paid or approved by the state or by any political subdivision;

126.   Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state of by any political subdivision.

127.   Is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

128.   In addition, the payment or receipt of bribes or kickbacks is prohibited under Cal. Bus. & Prof. Code §§ 650 and 650.1, and is also specifically prohibited in treatment of Medi-Cal patients pursuant to Cal. Welf. & Inst. Code § 14107.2.

129.   Defendants violated Cal Bus. & Prof. Code §§ 650 and 650.1 and Cal. Welf. & Inst. Code § 14107.2 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

130.   Defendants furthermore violated Cal. Gov't Code § 12651(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of California from at least 2009 to the present by its violation of federal and state laws, including Cal. Bus. & Prof. Code §§ 650 and 650.1 and Cal. Welf. &

Inst. Code § 14107.2, the Anti-Kickback Act and Stark Act Requirements, as described herein.

131.   The State of California, by and through the California Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

132.   Compliance with applicable Medicare, Medi-Cal and the various other federal and state laws cited herein was implied, and upon information and belief, also an express condition of payment of claims submitted to the State of California in connection with Defendants' fraudulent and illegal practices.

133.   Had the State of California known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

134.   As a result of Defendants' violations of Cal. Gov't Code § 12651(a), the State of California has been damaged in an amount far in excess of millions of dollars exclusive of interest.

135.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of themselves and the State of California.

136.   This Court is requested to accept supplemental jurisdiction over this related state claim as it is predicated upon the same exact facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

137.   Pursuant to the California False Claims Act, the State of California and Relator are entitled to the following damages as against Defendants:

138.   To the STATE OF CALIFORNIA:

139.   Three times the amount of actual damages which the State of California has sustained as a result of Defendants' fraudulent and illegal practices;

140.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants presented or caused to be presented to the State of California;

141.   Prejudgment interest; and

142.   All costs incurred in bringing this action.

143.   To RELATOR:

144.   The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and /or any other applicable provision of law;

145.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

146.   An award of reasonable attorneys' fees and costs; and

147.   Such further relief as this Court deems equitable and just.

## COUNT X

**(California Insurance Frauds Prevention Act, Cal. Ins. Code § 1871.7 *et seq.*)**

148.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

149.   This is a claim for treble damages and penalties under the California Insurance Fraud Prevention Act.

150.   By virtue of the acts described above, Defendants knowingly utilized a scheme by which they improperly procured "runners, cappers, steerers, and other persons" to procure patients who held private insurance contracts and against whom Defendants could cause the filing of claims for payment. *See* Cal. Ins. Code § I871.7(a).

151.   Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the private insurers in California, or for patients in California those insurers covered, for payment or approval in violation of each patient's private health insurance contract.

152.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements and omitted material facts to induce the private insurers in California, or for patients in California covered by those insurers, to approve or pay such false and fraudulent claims.

64

153.   By virtue of the acts described above, the Defendants conspired to violate the California Insurance Fraud Prevention Act and each patient's private health insurance contract.

154.   The private insurers in California, or those insurers that covered patients in California, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be presented by Defendants, paid and continue to pay the claims that are non-payable as a result of Defendants' illegal conduct.

155.   Defendants knowingly submitted and/or caused to be made or used false records or false statements in order to avoid or decrease their respective obligations to return overpayments to these private insurance companies.

156.   By reason of Defendants' acts, these private insurance companies have been damaged, and continue to be damaged, in a substantial amount to be determined at trial.

157.   Each claim for reimbursement that was a result of the Defendants' scheme represents a false or fraudulent record or statement and a false or fraudulent claim for payment.

158.   The State of California is entitled to the maximum penalty of $10,000.00 for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Defendants.

159.   WHEREFORE, Relators request the following relief:

65

160.   That this Court enter judgment against Defendants in an amount equal to three times the amount of damages that the private insurance companies have sustained because of Defendants' actions, plus a civil penalty of not less than $5,000.00 and not more than $10,000.00 for each violation of Cal. Ins. Code § 1871.7(a) and (b);

161.   At least thirty percent (30%) and up to forty percent (40%) of the proceeds of this action to the Relators if the State of California elects to intervene, and forty percent (40%) to fifty percent (50%) if it does not;

162.   Relators' attorneys' fees, litigation and investigation costs, and other related expenses; and

163.   Such other relief as the Court deems just and appropriate.

## COUNT XI

**(Colorado Medicaid False Claims Act, Col. Rev. Stat. §§ 25.5-4-303.5 *et seq.*)**

164.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

165.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Colorado. Upon information and belief, Defendants' actions described herein occurred in the State of Colorado as well.

66

166.   This is a qui tam action brought by Relator and the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, Colorado Revised Statutes § 25.5-4-303.5. *et seq.*

167.   Colorado Revised Statutes § 25.5-4-305 provides liability for any person who-

168.   Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

169.   Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

170.   Has possession, custody, or control of property or money used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and knowingly delivers, or causes to be delivered, less than all of the money or property;

171.   Authorizes the making or delivery of a document certifying receipt of property used, or to be used, by the state in connection with the "Colorado Medical Assistance Act" and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

172.   Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state in connection with the "Colorado Medical Assistance Act" who lawfully may not sell or pledge the property;

67

173.   Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act", or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state in connection with the "Colorado Medical Assistance Act;"

174.   Conspires to commit a violation of paragraphs (a) to (f) of this subsection.

175.   Defendants violated Colorado Revised Statutes § 25.5-4-305 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

176.   Defendants furthermore violated Colorado Revised Statutes § 25.5-4-305 and knowingly caused thousands of false claims to be made, used and presented to the State of Colorado from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

177.   The State of Colorado, by and through the State of Colorado Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

178.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Colorado in connection with Defendants' fraudulent and illegal practices.

179.   Had the State of Colorado known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

180.   As a result of Defendants' violations of Colorado Revised Statutes § 25.5-4-305 the State of Colorado has been damaged in an amount far in excess of millions of dollars exclusive of interest.

181.   Relator have direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Colorado Revised Statutes § 25.5-4-306(2) on behalf of itself and the State of Colorado.

182.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Colorado in the operation of its Medicaid program.

183.   Pursuant to the Colorado Medicaid False Claims Act, the State of Colorado and Relator are entitled to the following damages as against Defendants:

184. To the STATE OF COLORADO:

185. Three times the amount of actual damages which the State of Colorado has sustained as a result of Defendants' fraudulent and illegal practices;

186. A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Colorado;

187. Prejudgment interest; and

188. All costs incurred in bringing this action.

189. To RELATOR:

190. The maximum amount allowed pursuant to Colorado Revised Statutes § 25.5-4-306(4) and /or any other applicable provision of law;

191. Reimbursement for reasonable expenses which Relator incurred in connection with this action;

192. An award of reasonable attorneys' fees and costs; and

193. Such further relief as this court deems equitable and just.

## COUNT XII

**(Connecticut False Claims Act for Medical Assistance Programs, Connecticut General Statutes § 17b-301b. *et seq.*)**

194. Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

70

195. Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Connecticut. Upon information and belief, Defendants' actions described herein occurred in the State of Connecticut as well.

196. This is a qui tam action brought by Relator and the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act for Medical Assistance Programs, Connecticut General Statutes § 17b-301b. *et seq.*

197. Connecticut General Statutes § 17b-301b. provides liability for any person who-

198. Knowingly presents or causes to be presented to an officer or employee of the state a false or fraudulent claim for payment or approval under a medical assistance program administered by the Department of Social Services;

199. Knowingly make, use or cause to be made or used, a false record or statement to secure the payment or approval by the state of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services;

200. Conspire to defraud the state by securing the allowance or payment of a false or fraudulent claim under a medical assistance program administered by the Department of Social Services.

201.   Defendants violated Connecticut General Statutes § 17b-301b from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

202.   Defendants furthermore violated Connecticut General Statutes § 17b-301b and knowingly caused thousands of false claims to be made, used and presented to the State of Connecticut from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

203.   The State of Connecticut, by and through the State of Connecticut Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

204.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Connecticut in connection with Defendants' fraudulent and illegal practices.

205.   Had the State of Connecticut known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

206.   As a result of Defendants' violations of Connecticut General Statutes § 17b-301b the State of Connecticut has been damaged in an amount far in excess of millions of dollars exclusive of interest.

207.   Relator have direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Connecticut General Statutes § 17b-301d on behalf of itself and the State of Connecticut.

208.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Connecticut in the operation of its Medicaid program.

209.   Pursuant to the Connecticut False Claims Act for Medical Assistance Programs, the State of Connecticut and Relator are entitled to the following damages as against Defendants:

210.   To the STATE OF CONNECTICUT:

211.   Three times the amount of actual damages which the State of Connecticut has sustained as a result of Defendants' fraudulent and illegal practices;

212.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Connecticut;

213.   Prejudgment interest; and

214.   All costs incurred in bringing this action.

73

215.   To RELATOR:

216.   The maximum amount allowed pursuant to Connecticut General Statutes § 17b-301 and /or any other applicable provision of law;

217.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

218.   An award of reasonable attorneys' fees and costs; and

219.   Such further relief as this court deems equitable and just.

### COUNT XIII

### (Delaware Medicaid False Claims Act, 6 Del. C. § 1201 *et seq.*)

220.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

221.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Delaware. Upon information and belief, Defendants' actions described herein occurred in Delaware as well.

222.   This is a qui tam action brought by Relator and the State of Delaware to recover treble damages and civil penalties under the Delaware Medicaid False Claims Act, 6 Del. C. § 1201 *et seq.*

223.   6 Del. C. § 1201 *et seq.* provides liability for any person who—

74

224.   Knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

225.   Knowingly makes, uses or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved;

226.   Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

227.   Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, increase or decrease an obligation to pay or transmit money or property to or from the Government.

228.   Further, 31 Del. C. § 1005 provides that— It shall be unlawful for any person to offer or pay any remuneration (including any kickback, bribe or rebate) directly or indirectly, in cash or in kind to induce any other person . . . [t]o purchase, lease, order or arrange for or recommend purchasing, leasing or ordering any property, facility, service, or item of medical care or medical assistance for which payment may be made in whole or in part under any public assistance program.

229.   Defendants violated 6 Del. C. § 1201 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Delaware from 2009 to the present by its violation of federal and state laws, including 31

Del. C. §1005, and Anti-Kickback Act and the Stark Act Requirements, as described herein.

230.   The State of Delaware, by and through the Delaware Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

231.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Delaware in connection with Defendants' fraudulent and illegal practices.

232.   Had the State of Delaware known that Defendants were violating the federal and state laws cited herein, it wound not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

233.   As a result of Defendants' violations of 6 Del C. § 1201(a), the State of Delaware has been damage in an amount far in excess of millions of dollars exclusive of interest.

234.   Defendants did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any

investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

235.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to 6 Del. C. § 1203(b) on behalf of themselves and the State of Delaware.

236.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Delaware in the operation of its Medicaid program.

237.   Pursuant to the Delaware Medicaid False Claims Act, the State of Delaware and Relator are entitled to the following damages as against Defendants:

238.   To the STATE OF DELAWARE:

239.   Three times the amount of actual damages which the State of Delaware has sustained as a result of Defendants' fraudulent and illegal practices;

240.   A civil penalty on not less than $5,500 and not more than $ 11,000 for each false claim which Defendants caused to be presented to the State of Delaware;

241.   Prejudgment interest; and

242.   All costs incurred in bringing this action.

243.   To RELATOR:

244.   The maximum amount allowed pursuant to 6 Del C. § 1205, and /or any other applicable provision of law;

245.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

246.   An award of reasonable attorneys' fees and costs; and

247.   Such further relief as this court deems equitable and just.

## COUNT XIV

**(District of Columbia Procurement Reform Amendment Act, D.C. § 2-308.13** *et seq.***)**

248.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

249.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the District of Columbia. Upon information and belief, Defendants' actions described herein occurred in the District of Columbia as well.

250.   This is a qui tam action brought by Relator and the District of Columbia to recover treble damages and civil penalties under the District of Columbia Procurement Reform Amendment Act, D.C. § 2-308.13 *et seq.*

251.   D.C. Code § 2-30814(a) provides liability for any person who-

252.   Knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval;

253.   Knowingly makes, uses or causes to be made or used, a false record or statement to get a false claim paid or approved by the District;

254.   Conspires to defraud the District by getting a false claim allowed or paid by the District;

255.   Is the beneficiary of an inadvertent submission of a false claim to the District, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the District.

256.   In addition, D.C. Code § 4-802(c) prohibits soliciting, accepting, or agreeing to accept any type of remuneration for the following:

257.   Referring a recipient to a particular provider of any item or service or for which payment may be made under the District of Columbia Medicaid program; or

258.   Recommending the purchase, lease, or order of any good, facility, service, or item for which payment may be made under the District of Columbia Medicaid Program.

259.   Defendants violated D. C. Code § 4-802(c) from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

260.   Defendants furthermore violated D. C. Code § 2-308.14(a) and knowingly caused thousands of false claims to be made, used and presented to the District of

Columbia from at least 2009 to the present by its violation of federal and state laws, including D. C. Code § 4-802(c), the Anti-Kickback Act and the Stark Act, as described herein.

261.   The District of Columbia, by and through the District of Columbia Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

262.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the District of Columbia in connection with Defendants' fraudulent and illegal practices.

263.   Had the District of Columbia known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

264.   As a result of Defendants' violations of D.C. Code § 2-308.14(a) the District of Columbia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

265.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to D.C. Code § 2-308.15(b) on behalf of himself and the District of Columbia.

266.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the District of Columbia in the operation of its Medicaid program.

267.   Pursuant to the District of Columbia Procurement Reform Amendment Act, the District of Columbia and Relator are entitled to the following damages as against Defendants:

268.   To the DISTRICT OF COLUMBIA:

269.   Three times the amount of actual damages which the District of Columbia has sustained as a result of Defendants' fraudulent and illegal practices;

270.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the District of Columbia;

271.   Prejudgment interest; and

272.   All costs incurred in bringing this action.

273.   To RELATOR:

274.   The maximum amount allowed pursuant to D. C. Code § 2-308.15(f) and /or any other applicable provision of law;

81

275.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

276.   An award of reasonable attorneys' fees and costs; and

277.   Such further relief as this court deems equitable and just.

## COUNT XV

### (Florida False Claims Act, Fla. Stat. §§ 68.081 *et seq.*)

278.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

279.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Florida. Upon information and belief, Defendants' actions described herein occurred in the State of Florida as well.

280.   This is a qui tam action brought by Relator and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, West's F.S.A. § 68.081 *et seq*.

281.   West's F.S.A. § 68.082 provides liability for any person who-

282.   Knowingly presents or causes to be presented to an officer or employee of an agency a false claim for payment or approval

283.   Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency

284.   Conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid

285.   Defendants violated West's F.S.A. § 68.082 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

286.   Defendants furthermore violated West's F.S.A. § 68.082 and knowingly caused thousands of false claims to be made, used and presented to the State of Florida from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

287.   The State of Florida, by and through the State of Florida Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

288.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Florida in connection with Defendants' fraudulent and illegal practices.

289.   Had the State of Florida known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

83

290.   As a result of Defendants' violations of West's F.S.A. § 68.082 the State of Florida has been damaged in an amount far in excess of millions of dollars exclusive of interest.

291.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to West's F.S.A. § 68.083(2) on behalf of themselves and the State of Florida.

292.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Florida in the operation of its Medicaid program.

293.   Pursuant to the Florida False Claims Act, the State of Florida and Relator are entitled to the following damages as against Defendants:

294.   To the STATE OF FLORIDA:

295.   Three times the amount of actual damages which the State of Florida has sustained as a result of Defendants' fraudulent and illegal practices;

296.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Florida;

297.   Prejudgment interest; and

298.   All costs incurred in bringing this action.

299.   To RELATOR:

300.   The maximum amount allowed pursuant to West's F.S.A. § 68.085 and /or any other applicable provision of law;

301.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

302.   An award of reasonable attorneys' fees and costs; and

303.   Such further relief as this court deems equitable and just.

## COUNT XVI

**(Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq*.)**

304.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

305.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Georgia. Upon information and belief, Defendants' actions described herein occurred in Georgia as well.

306.   This is a qui tam action brought by Relator and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq*.

307.   Ga. Code Ann. § 49-4-168.1 *et seq*. provides liability for any person who—

308.   Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

85

309.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

310.   Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

311.   Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay, repay or transmit money or property to the State of Georgia.

312.   Defendants violated Ga. Code Ann. § 49-4-168.1 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Georgia from 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act, as described herein.

313.   The State of Georgia, by and through the Georgia Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

314.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Georgia in connection with Defendants' fraudulent and illegal practices.

315.   Had the State of Georgia known that Defendants were violating the federal and state laws cited herein, it wound not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

316.   As a result of Defendants' violations of Ga. Code Ann. § 49-4-168.1, the State of Georgia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

317.   Defendants did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

318.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Ga. Code Ann., § 49-4-168.2(b) on behalf of themselves and the State of Georgia.

319.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

320.   Pursuant to the Georgia State False Medicaid Claims Act, the State of Georgia and Relator are entitled to the following damages as against Defendants:

321.   To the STATE OF GEORGIA:

322..   Three times the amount of actual damages which the State of Georgia has sustained as a result of Defendants' fraudulent and illegal practices;

323.   A civil penalty on not less than $5,500 and not more than $ 11,000 for each false claim which Defendants caused to be presented to the State of Georgia;

324.   Prejudgment interest; and

325.   All costs incurred in bringing this action.

326.   To RELATOR:

327.   The maximum amount allowed pursuant to Ga. Code Ann., § 49-4-168.2(i), and/ or any other applicable provision of law;

328.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

329.   An award of reasonable attorneys' fees and costs; and

330.   Such further relief as this Court deems equitable and just.

## COUNT XVII

### (Hawaii False Claims Act, Haw. Rev. Stat. § 661.21 *et seq*.)

331.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

88

332.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Hawaii. Upon information and belief, Defendants' actions described herein occurred in Hawaii as well.

333.   This is a qui tam action brought by Relator and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, Haw. Rev. Stat. § 661.21 *et seq.*

334.   Haw. Rev. Stat. § 661-21(a) provides liability for any person who—

335.   Knowingly presents, or causes to be presented, to an officer or employee of the state a false or fraudulent claim for payment or approval;

336.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

337.   Conspires to defraud the state by getting a false or fraudulent claim allowed or paid; or

338.   Is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim.

339.   Defendants violated Haw. Rev. Stat. § 661.21(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State

89

of Hawaii from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and Stark Act, as described herein.

340.   The State of Hawaii, by and through the Hawaii Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

341.   Compliance with applicable Medicare, Medicaid and the various other federal state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Hawaii in connection with Defendants' fraudulent and illegal practices.

342.   Had the State of Hawaii known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

343.   As a result of Defendants' violations of Haw. Rev. Stat. § 661-21(a) the State of Hawaii has been damaged in an amount far in excess of millions of dollars exclusive of interest.

344.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Haw. Rev. Stat. § 661-25(a) on behalf of themselves and the State of Hawaii.

345.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Hawaii in the operation of its Medicaid program.

346.   Pursuant to the Hawaii False Claims Act, the State of Hawaii and Relator are entitled to the following damages as against Defendants:

347.   To the STATE OF HAWAII:

348.   Three times the amount of actual damages which the State of Hawaii has sustained as a result of Defendants' fraudulent and illegal practices;

349.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Hawaii;

350.   Prejudgment interest; and

351.   All costs incurred in bringing this action.

352.   To RELATOR:

353.   The maximum amount allowed pursuant to Haw. Rev. Stat. § 661-27 and /or any other applicable provision of law;

354.   Reimbursement for reasonable expenses which Relator incurred in connection with this action; and

355.   Such further relief as this Court deems equitable and just.

**COUNT XVIII**

91

**(Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq*.)**

356. Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

357. Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Illinois. Upon information and belief, Defendants' actions described herein occurred in Illinois as well.

358. This is a qui tam action brought by Relator and the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 *et seq*.

359. 740 ILCS 175/3(a) provides liability for any person who—

360. knowingly presents, or causes to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

361. knowingly makes, uses, of causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

362. Conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

363. In addition, 305 ILCS 5/8A-3(b) of the Illinois Public Aid Code (Vendor Fraud and Kickbacks) prohibits the solicitation or receipt of any remuneration,

92

including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any item of service for which payment may be made in whole or in part under the Illinois Medicaid program.

364. Defendants violated 305 ILCS 5/8A-3(b) from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

365. Defendants furthermore violated 740 ILCS 175/3(a) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Illinois from at least 2009 to the present by its violation of federal and state laws, including 305 ILCS 5/8A-3(b), the Anti-Kickback Act and the Stark Act, as described herein.

366. The State of Illinois, by and through the Illinois Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

367. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Illinois in connection with Defendants' fraudulent and illegal practices.

368. Had the State of Illinois known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health

care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

369.   As a result of Defendants' violations of 740 ILCS 175/3(a), the State of Illinois has been damaged in an amount far in excess of millions of dollars exclusive of interest.

370.   Relator are private persons with direct and independent knowledge of the allegation of this Complaint, who have brought this action pursuant to 740 ILCS 175/3(b) on behalf of themselves and the State of Illinois.

371.   This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Illinois in the operation of its Medicaid program.

372.   Pursuant to the Illinois Whistleblower Reward and Protection Act, the State of Illinois and Relator are entitled to the following damages as against Defendants:

373.   To the STATE OF ILLINOIS:

374.   Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' fraudulent and illegal practices;

375.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Illinois;

376.   Prejudgment interest; and

94

377.   All costs incurred in bringing this action.

378.   To RELATOR:

379.   The maximum amount allowed pursuant to 740 ILCS/4(d) and/or any other applicable provision of law;

380.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

381.   An award of reasonable attorneys' fees and costs; and

382.   Such further relief as this Court deems equitable and just.

## COUNT XIX

**(Illinois Insurance Claims Fraud Prevention Act, 740 ILCS 92/1 *et seq.*)**

383.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

384.   This is a claim for treble damages and penalties under the Illinois Insurance Claims Fraud Prevention Act.

385.   By virtue of the acts described above, Defendants knowingly offered and/or paid remuneration to physicians to induce the procurement of patients for Defendants' devices for which Defendants could cause the filing of claims for payment from the patients' insurers. *See* 740 Ill. Comp. Stat. § 92/5(a).

386.   Defendants knowingly presented or caused to he presented false or fraudulent claims to the private insurers in Illinois, or for patients in Illinois those

95

insurers covered, for payment or approval in violation of each patient's private health insurance contract.

387.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements and omitted material facts to induce the private insurers in Illinois, or for patients in Illinois covered by those insurers, to approve or pay such false and fraudulent claims.

388.   By virtue of the acts described above, the Defendants conspired to violate the Illinois Insurance Claims Fraud Prevention Act and each patient's private health insurance contract.

389.   The private insurers in Illinois, or those insurers that covered patients in Illinois, unaware of the falsity of the records, statements, and claims made, used, presented, or caused to be presented by Defendants, paid and continue to pay the claims that are non-payable as a result of Defendants' illegal conduct.

390.   Defendants knowingly submitted and/or caused to be made or used false records or false statements in order to avoid or decrease their respective obligations to return overpayments to these private insurance companies.

391.   By reason of Defendants' acts, these private insurance companies have been damaged, and continue to be damaged, in a substantial amount to be determined at trial.

392.   Each claim for reimbursement that was a result of the Defendants' scheme represents a false or fraudulent record or statement and a false or fraudulent claim for payment.

393.   The State of Illinois is entitled to the maximum penalty of $10,000.00 for each and every false or fraudulent claim, record, or statement made, 'used, presented, or caused to be made, used, or presented by Defendants.

394.   WHEREFORE, Relators request the following relief:

395.   That this Court enter judgment against Defendants in an amount equal to three times the amount of damages that the private insurance companies have sustained because of Defendants' actions, plus a civil penalty of not less tl1an $5,000,00 and not more than $10,000.00 for each violation of 740 Ill. Comp. Stat. §§ 92/5(a) and (b);

396.   No less than thirty percent (30%) of the proceeds of this action to the Relators if the State of Illinois elects to intervene, and no less than forty percent (40%) if it does not;

397.   Relators' attorneys' fees, litigation and investigation costs, and other related expenses; and

398.   Such other relief as the Court deems just and appropriate.

## COUNT XX

**(Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5 *et seq.*)**

97

399.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

400.    Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants.  Defendants conduct business in the State of Indiana. Upon information and belief, Defendants' actions described herein occurred in Indiana as well.

401.    This is a qui tam action brought by Relator and the State of Indiana to recover treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Act, IC 5-11-5.5 *et seq.*

402.    IC 5-11-5.5-2 provides liability for any person who—

403.    presents a false claim to the state for payment or approval;

404.    makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

405.    with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

406.    with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;

407.    receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

98

408.   makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

409.   conspires with another person to perform an act described in subdivisions (a) through (f); or

410.   causes or induces another person to perform an act described in subdivisions (a) through (f).

411.   In addition, IC 12-15-24-1 & IC 12-15-24-2 prohibits the provision of a kickback or bribe in connection with the furnishing of items or services or the making or receipt of the payment under the Indiana Medicaid program.

412.   Defendants violated IC 12-15-24-1 & IC 12-15-24-2 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

413.   Defendants furthermore violated IC 5-11-5.5-2 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Indiana from at least 2009 to the present by its violation of federal and state laws, including IC 12-15-24-1 & IC 12-15-24-2, the Anti-Kickback Act and the Stark Act, as described herein.

414.   The State of Indiana, by and through the Indiana Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

415.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Indiana in connection with Defendants' fraudulent and illegal practices.

416.    Had the State of Indiana known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

417.    As a result of Defendants' violations of IC 5-11-5.5-2, the State of Indiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

418.    Relator are private persons with direct and independent knowledge of the allegation of this Complaint, who have brought this action pursuant to IC 5-11-5.5-4 on behalf of themselves and the State of Indiana.

419.    This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Indiana in the operation of its Medicaid program.

420.    Pursuant to the Indiana False Claims and Whistleblower Protection Act, the State of Indiana and Relator are entitled to the following damages as against Defendants:

421.    To the STATE OF INDIANA:

422.    Three times the amount of actual damages which the State of Indiana has sustained as a result of Defendants' fraudulent and illegal practices;

423.    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Indiana;

424.    Prejudgment interest; and

425.    All costs incurred in bringing this action.

426.    To RELATOR:

427.    The maximum amount allowed pursuant to IC 5-11-5.5-6 and/or any other applicable provision of law;

428.    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

429.    An award of reasonable attorneys' fees and costs; and

430.    Such further relief as this Court deems equitable and just.

## COUNT XXI

**(Iowa False Claims Act, Iowa Code § 685.1 *et seq.*)**

431.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

432.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants.  Defendants conduct business in the State of Iowa. Upon information and belief, Defendants' actions described herein occurred in Iowa as well.

433.   This is a qui tam action brought by Relator and the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Act, Iowa Code § 685.1 *et seq*.

434.   Iowa Code § 685.2 provides liability for any person who—

435.   Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

436.   Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

437.   Conspires to commit a violation of paragraphs (a), (b), (d)-(g);

438.   Has possession, custody, or control of property or money used, or to be used, by the state and knowingly delivers, or causes to be delivered, less than all of that money or property;

439.   Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or

102

delivers the receipt without completely knowing that the information on the receipt is true;

440.   Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, or a member of the Iowa national guard, who lawfully may not sell or pledge property;

441.   Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state.

442.   Defendants violated Iowa Code § 685.2 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

443.   Defendants furthermore violated Iowa Code § 685.2 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Iowa from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act, as described herein.

444.   The State of Iowa, by and through the Iowa Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

445.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein with an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Iowa in connection with Defendants' fraudulent and illegal practices.

446.   Had the State of Iowa known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

447.   As a result of Defendants' violations of Iowa Code § 685.2, the State of Iowa has been damaged in an amount far in excess of millions of dollars exclusive of interest.

448.   Relator are private persons with direct and independent knowledge of the allegation of this Complaint, who have brought this action pursuant to Iowa Code § 685.3(2)(a) on behalf of themselves and the State of Iowa.

449.   This court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Iowa in the operation of its Medicaid program.

450.   Pursuant to the Iowa False Claims Act, the State of Iowa and Relator are entitled to the following damages as against Defendants:

451.   To the STATE OF IOWA:

452.   Three times the amount of actual damages which the State of Iowa has sustained as a result of Defendants' fraudulent and illegal practices;

453.   A civil penalty for each false claim which Defendants caused to be presented to the State of Iowa;

454.   Prejudgment interest; and

455.   All costs incurred in bringing this action.

456.   To RELATOR:

457.   The maximum amount allowed pursuant to Iowa Code § 685.3(4)(a)(1) and/or any other applicable provision of law;

458.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

459.   An award of reasonable attorneys' fees and costs; and

460.   Such further relief as this Court deems equitable and just.

## COUNT XXII

**(Louisiana Medical Assistance Programs Integrity Law, La Rev. Stat. Ann §**

**437.1 *et seq*.)**

461.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

462. Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Louisiana. Upon information and belief, Defendants' actions described herein occurred in Louisiana as well.

463. This is a qui tam action brought by Relator and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, La Rev. Stat. Ann § 437.1 *et seq.*

464. La. Rev. Stat. Ann. § 438.3 provides –

465. No person shall knowingly present or cause to be presented a false or fraudulent claim;

466. No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds;

467. No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

468. In addition, La. Rev. Stat. Ann.§ 438.2(A) prohibits the solicitation, receipt, offering or payment of any financial inducements, including kickbacks, bribes, rebated, etc., directly or indirectly, overtly or covertly, in cash or in kind, for furnishing health care goods or services paid for in whole or in part by the Louisiana medical assistance programs.

469. Defendants violated La. Rev. Stat. Ann § 438.2(A) from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

470. Defendants furthermore violated La. Rev. Stat. Ann. § 438.3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Louisiana from at least 2009 to the present by its violation of federal and state laws, including La. Rev. Stat. Ann. § 438.2(A), the Anti-Kickback Act and Stark Act, as described herein.

471. The State of Louisiana, by and through the Louisiana Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

472. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Louisiana in connection with Defendants' fraudulent and illegal practices.

473. Had the State of Louisiana known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

474.   As a result of Defendants' violations of La. Rev. Stat. Ann. § 438.3 the State of Louisiana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

475.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to La. Rev. Stat. Ann. § 439.1(A) on behalf of themselves and the State of Louisiana.

476.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Louisiana in the operation of its Medicaid program.

477.   Pursuant to the Louisiana Medical Assistance Programs Integrity Law, the State of Louisiana and Relator are entitled to the following damages as against Defendants:

478.   To the STATE OF LOUISIANA:

479.   Three times the amount of actual damages which the State of Louisiana has sustained as a result of Defendants' fraudulent and illegal practices;

480.   A civil penalty of not more than $10,000 for each false claim which Defendants caused to be presented to the State of Louisiana;

481.   Prejudgment interest; and

482.   All costs incurred in bringing this action.

483.   To RELATOR:

484.   The maximum amount allowed pursuant to La. Rev. Stat. § 439.4(A) and/or any other applicable provision of law;

485.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

486.   An award or reasonable attorneys' fees and costs; and

487.   Such further relief as this Court deems equitable and just.

## COUNT XXIII

**(Maryland Medicaid False Claims Against State Health Plans and State Health Programs Act, Annotated Code of Maryland § 2-601 *et seq.*)**

488.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

489.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the Commonwealth of Maryland. Upon information and belief, Defendants' actions described herein occurred in Maryland as well.

490.   This is a qui tam action brought by Relator and the State of Maryland to recover treble damages and civil penalties under the Maryland Medicaid False Claims Against State Health Plans and State Health Programs Act, Annotated Code of Maryland § 2-601 *et seq.*

109

491.    Annotated Code of Maryland § 2-602 provides liability for any person who-

492.    Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval;

493.    Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim;

494.    Conspires to commit a violation under this subtitle;

495.    Has possession, custody, or control of money or other property used by or on behalf of the State under a State health plan or a State health program and knowingly delivers or causes to be delivered to the State less than all of that money or other property;

496.    Knowingly makes any other false or fraudulent claim against a State health plan or a State health program.

497.    Defendants violated the Annotated Code of Maryland § 2-602 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

498.    Defendants furthermore violated the Annotated Code of Maryland § 2-602 and knowingly caused thousands of false claims to be made, used and presented to the State of Maryland from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

499.   The State of Maryland, by and through the State of Maryland Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

500.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Maryland in connection with Defendants' fraudulent and illegal practices.

501.   Had the State of Maryland known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

502.   As a result of Defendants' violations of the Annotated Code of Maryland § 2-602 the State of Maryland has been damaged in an amount far in excess of millions of dollars exclusive of interest.

503.   Relator have direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to the Annotated Code of Maryland § 2-604 on behalf of themselves and the State of Maryland.

504.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and

merely asserts separate damage to the State of Maryland in the operation of its Medicaid program.

505.   Pursuant to the Maryland Medicaid False Claims Against State Health Plans and State Health Programs Act, the State of Maryland and Relator are entitled to the following damages as against Defendants:

506.   To the STATE OF MARYLAND:

507.   Three times the amount of actual damages which the State of Maryland has sustained as a result of Defendants' fraudulent and illegal practices;

508.   A civil penalty of not less than the amount of the actual damages the State health plan or State health program incurs as a result of the violation, and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Maryland;

509.   Prejudgment interest; and

510.   All costs incurred in bringing this action.

511.   To RELATOR:

512.   The maximum amount allowed pursuant to the Annotated Code of Maryland § 2-605 and /or any other applicable provision of law;

513.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

514.   An award of reasonable attorneys' fees and costs; and

112

515.   Such further relief as this court deems equitable and just.

## COUNT XXIV

### (Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap 12 § 5(A) *et seq.*)

516.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

517.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the Commonwealth of Massachusetts. Upon information and belief, Defendants' actions described herein occurred in Massachusetts as well.

518.   This is a qui tam action brought by Relator and State of Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap 12 § 5(A) *et seq.*

519.   Mass. Gen. Laws Ann. Chap 12 § 5B provides liability for any person who—

520.   Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

521.   Knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof;

113

522.   Conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

523.   Is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reason able time after discovery of the false claim.

524.   In addition, Mass. Gen. Laws Ann. Chap. 118E § 41 prohibits the solicitation, receipt or offering of any remuneration, including any bribe ore rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for furnishing any good, service or item for which payment may be made in whole or in part under the Massachusetts Medicaid program.

525.   Defendants violated Mass. Gen. Laws Ann. Chap. 118E § 41 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

526.   Defendants furthermore violated Mass. Gen. Laws Ann. Chap 12 § 5B and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Massachusetts from at least 2009 to the present by its violation of federal and state laws, including Mass. Gen. Laws Ann. Chap. 118E § 41, the Anti-Kickback Act and the Stark Act, as described herein.

527.   The State of Massachusetts, by and through the Massachusetts Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

528.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Massachusetts in connection with Defendants' fraudulent and illegal practices.

529.   Had the State of Massachusetts known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

530.   As a result of Defendants' violations of Mass. Gen. Laws Ann. Chap. 12 § 5B the State of Massachusetts has been damaged in an amount far in excess of millions of dollars exclusive of interest.

531.   Relator are private persons with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to Mass. Gen. Laws Ann Chap. 12 § 5(c)(2) on behalf of themselves and the State of Massachusetts.

115

532.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of Massachusetts in the operation of its Medicaid program.

533.   Pursuant to the Massachusetts False Claims Act, the State of Massachusetts and Relator are entitled to the following damages as against Defendants:

534.   To the STATE OF MASSACHUSETTS:

535.   Three times the amount of actual damages which that State of Massachusetts has sustained as a result of Defendants' fraudulent and illegal practices;

536.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Massachusetts;

537.   Prejudgment interest; and

538.   All costs incurred in bringing this action.

539.   To RELATOR:

540.   The maximum amount allowed pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5F and/or any other applicable provision of law;

541.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

542.   An award of reasonable attorneys' fees and costs; and

543.   Such further relief as this court deems equitable and just.

116

## COUNT XXV

**(Michigan Medicaid False Claim Act, M.C.L.A. 400.601 *et seq.*)**

544.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

545.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in Michigan. Upon information and belief, Defendants' actions described herein occurred in Michigan as well.

546.   This is a qui tam action brought by Relator and State of Michigan for treble damages and penalties under Michigan Medicaid False Claim Act, M.C.L.A. 400.601 *et seq.*

547.   M.C.L.A. 400.607 provides liability for any person who, among other things—

548.   Causes to be made or presented to an employee or officer of this state a claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws, upon or against the state, knowing the claim to be false.

549.   Presents or causes to be made or presented a claim under the social welfare act, Act No. 280 of the Public Acts of 1939, which he or she knows falsely

represents that the goods or services for which the claim is made were medically necessary in accordance with professionally accepted standards.

550.   In addition, M.C.L.A. 400.604 prohibits the solicitation, receipt or offering of a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made in whole or in part pursuant to the Michigan Medicaid program.

551.   Defendants violated M.C.L.A. 400.604 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

552.   Defendants furthermore violated M.C.L.A. 400.607 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Michigan from at least 2009 to the present by its violation of federal and state laws, including M.C.L.A. 400.604, the Anti-Kickback Act and the Stark Act, as described herein.

553.   The State of Michigan, by and through the Michigan Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

554.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and

118

belief, also an express condition of payment of claims submitted to the State of Michigan in connection with Defendants' fraudulent and illegal practices.

555.   Had the State of Michigan known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

556.   As a result of Defendants' violations of M.C.L.A. 400.607 the State of Michigan has been damaged in an amount far in excess of millions of dollars exclusive of interest.

557.   Relator are private persons with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to M.C.L.A. 400.610a on behalf of themselves and the State of Michigan.

558.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

559.   Pursuant to the Michigan Medicaid False Claim Act, the State of Michigan and Relator are entitled to the following damages as against Defendants:

560.   To the STATE OF MICHIGAN:

561.   Three times the amount of actual damages which that State of Michigan has sustained as a result of Defendants' fraudulent and illegal practices;

562.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Michigan;

563.   Prejudgment interest; and

564.   All costs incurred in bringing this action.

565.   To RELATOR:

566.   The maximum amount allowed pursuant to M.C.L.A. 400.610a(9) and/or any other applicable provision of law;

567.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

568.   An award of reasonable attorneys' fees and costs; and

569.   Such further relief as this court deems equitable and just.

## COUNT XXVI

### (Minnesota False Claims Act, (Minnesota Statutes § 15C.01 *et seq.*)

570.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

571.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business

in Minnesota. Upon information and belief, Defendants' actions described herein occurred in Minnesota as well.

572.   This is a qui tam action brought by Relator and the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, Minnesota Statutes § 15C.01 *et seq.*

573.   Minnesota Statutes § 15C.02 provides liability for any person who-

574.   Knowingly presents, or causes to be presented, to an officer or employee of the state or a political subdivision a false or fraudulent claim for payment or approval;

575.   Knowingly makes or uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a political subdivision;

576.   Knowingly conspires to either present a false or fraudulent claim to the state or a political subdivision for payment or approval or makes, uses, or causes to be made or used a false record or statement to obtain payment or approval of a false or fraudulent claim.

577.   Defendants violated Minnesota Statutes § 15C.02 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

578.   Defendants furthermore violated Minnesota Statutes § 15C.02 and knowingly caused thousands of false claims to be made, used and presented to the

State of Minnesota from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

579.   The State of Minnesota, by and through the State of Minnesota Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

580.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Minnesota in connection with Defendants' fraudulent and illegal practices.

581.   Had the State of Minnesota known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

582.   As a result of Defendants' violations of Minnesota Statutes § 15C.02 the State of Minnesota has been damaged in an amount far in excess of millions of dollars exclusive of interest.

122

583.   Relator have direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Minnesota Statutes § 15C.05 on behalf of themselves and the State of Minnesota.

584.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Minnesota in the operation of its Medicaid program.

585.   Pursuant to the Minnesota False Claims Act, the State of Minnesota and Relator are entitled to the following damages as against Defendants:

586.   To the STATE OF MINNESOTA:

587.   Three times the amount of actual damages which the State of Minnesota has sustained as a result of Defendants' fraudulent and illegal practices;

588.   A civil penalty of not less than $5,500, and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Minnesota;

589.   Prejudgment interest; and

590.   All costs incurred in bringing this action.

591.   To RELATOR:

592.   The maximum amount allowed pursuant to Minnesota Statutes § 15C.12 and § 15C.13 and /or any other applicable provision of law;

593.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

594.   An award of reasonable attorneys' fees and costs; and

595.   Such further relief as this court deems equitable and just.

## COUNT XXVI

### (Missouri Health Care Payment Fraud and Abuse Act, Missouri Revised Statutes § 191.900 *et seq.*)

596.    Relator re-alleges and incorporates by reference each of the paragraphs above as if fully set forth herein and further alleges as follows.

597.   Additionally, Relator states that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Missouri. Upon information and belief, Defendants' actions described herein occurred in the State of Missouri as well.

598.   This is a qui tam action brought by Relator and the State of Missouri to recover treble damages and civil penalties under the Missouri Health Care Payment Fraud And Abuse Act, Missouri Revised Statutes § 191.900 et seq.

599.   The Missouri Health Care Payment Fraud And Abuse Act § 191-905(1) provides liability for any person –

124

600.   Knowingly presenting to a health care payer a claim for a health care payment that falsely represents that the health care for which the health care payment is claimed was medically necessary, if in fact it was not;

601.   Knowingly concealing the occurrence of any event affecting an initial or continued right under a medical assistance program to have a health care payment made by a health care payer for providing health care;

602.   Knowingly concealing or failing to disclose any information with the intent to obtain a health care payment to which the health care provider or any other health care provider is not entitled, or to obtain a health care payment in an amount greater than that which the health care provider or any other health care provider is entitled.

603.   Knowingly presenting a claim to a health care payer that falsely indicates that any particular health care was provided to a person or persons, if in fact health care of lesser value than that described in the claim was provided.

604.   The Missouri Health Care Payment Fraud And Abuse Act § 191-905(2) provides liability if any person shall knowingly solicit or receive any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind in return for -

605.   Referring another person to a health care provider for the furnishing or arranging for the furnishing of any health care; or

125

606.   Purchasing, leasing, ordering or arranging for or recommending purchasing, leasing or ordering any health care.

607.   The Missouri Health Care Payment Fraud And Abuse Act § 191-905(3) provides liability if any person shall knowingly offer or pay any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in kind, to any person to induce such person to refer another person to a health care provider for the furnishing or arranging for the furnishing of any health care.

608.   Defendants violated the Missouri Health Care Payment Fraud and Abuse Act § 191-905(1) & (2) & (3) from at least 2001 to the present by engaging in the fraudulent and illegal practices described herein.

609.   Defendants furthermore violated Missouri Health Care Payment Fraud And Abuse Act § 191-905(1) & (2) & (3) and knowingly caused thousands of false claims to be made, used and presented to Missouri from at least 2009 to the present by its violation of federal and state laws, including Missouri Revised Statutes §191-905(3), the Anti-Kickback Act and Stark Act Requirements, as described herein.

610.   Missouri, by and through the Missouri Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices,

126

paid the claims submitted by health care providers and third payers in connection therewith.

611.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to Missouri in connection with Defendants' fraudulent and illegal practices.

612.   Had the State of Missouri known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

613.   As a result of Defendants' violations of § 191-905(1) & (2) & (3), the State of Missouri has been damaged in an amount far in excess of millions of dollars exclusive of interest.

614.   Relator is a private person with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Missouri Revised Statutes § 191.907 on behalf of themselves and the State of Missouri.

615.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Missouri in the operation of its Medicaid program.

616.    Pursuant to the Missouri Health Care Payment Fraud And Abuse Act, the State of Missouri and Relator is entitled to the following damages as against Defendants:

617.    To the STATE OF MISSOURI:

618.    Three times the amount of actual damages which the State of Missouri has sustained as a result of Defendants' fraudulent and illegal practices;

619.    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Missouri;

620.    Prejudgment interest; and

621.    All costs incurred in bringing this action.

622.    To RELATOR:

623.    The maximum amount allowed pursuant to Missouri Revised Statutes § 191.907 and /or any other applicable provision of law;

624.    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

625.    An award of reasonable attorneys' fees and costs; and

626.    Such further relief as this court deems equitable and just.

## COUNT XXVII

**(Montana False Claims Act, MT ST 17-8-401 *et seq.*)**

128

627.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

628.    Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in Montana. Upon information and belief, Defendants' actions described herein occurred in Montana as well.

629.    This is a qui tam action brought by Relator and State of Montana for treble damages and penalties under Montana False Claims Act, MT ST 17-8-401 *et seq*.

630.    MT ST 17-8-403 provides liability for any person who—

631.    knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

632.    knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

633.    conspiring to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity.

634.    In addition, MT ST 45-6-313 prohibits the solicitation, receipt or offering any remuneration, including but not limited to a kickback, bribe, or rebate, other than an amount legally payable under the medical assistance program, for furnishing services or items for which payment may be made under the Montana Medicaid program.

635.   Defendants violated MT ST 45-6-313 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

636.   Defendants furthermore violated MT ST 17-8-403 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Montana from at least 2009 to the present by its violation of federal and state laws, including MT ST 45-6-313, the Anti-Kickback Act and the Stark Act, as described herein.

637.   The State of Montana, by and through the Montana Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

638.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Montana in connection with Defendants' fraudulent and illegal practices.

639.   Had the State of Montana known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

130

640.   As a result of Defendants' violations of MT ST 17-8-403 the State of Montana has been damaged in an amount far in excess of millions of dollars exclusive of interest.

641.   Relator are private persons with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to MT ST 17-8-406 on behalf of themselves and the State of Montana.

642.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of Montana in the operation of its Medicaid program.

643.   Pursuant to the Montana False Claims Act, the State of Montana and Relator are entitled to the following damages as against Defendants:

644.   To the STATE OF MONTANA:

645.   Three times the amount of actual damages which that State of Montana has sustained as a result of Defendants' fraudulent and illegal practices;

646.   A civil penalty of between $5,500 and $11,000 (adjusted for inflation) for each false claim which Defendants caused to be presented to the State of Montana;

647.   Prejudgment interest; and

648.   All costs incurred in bringing this action.

649.   To RELATOR:

131

650.   The maximum amount allowed pursuant to MT ST 17-8-410 and/or any other applicable provision of law;

651.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

652.   An award of reasonable attorneys' fees and costs; and

653.   Such further relief as this Court deems equitable and just.

## COUNT XXVIII

### (Nevada False Claims Act, N.R.S. § 357.010 *et seq.*)

654.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

655.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Nevada. Upon information and belief, Defendants' actions described herein occurred in Nevada as well.

656.   This is a qui tam action brought by Relator and the State of Nevada to recover treble damages and civil penalties under the Nevada False Claims Act, N.R.S. § 357.010 et. seq.

657.   N.R.S. § 357.040(1) provides liability for any person who—

658.   Knowingly presents or causes to be presented a false claim for payment or approval;

132

659.   Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim;

660.   Conspires to defraud by obtaining allowance or payment of a false claim;

661.   Is a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, fails to disclose the falsity to the state or political subdivision within a reasonable time.

662.   In addition, N.R.S. § 422.560 prohibits the solicitation, acceptance or receipt of anything of value in connection with the provision of medical goods or services for which payment may be made in whole or in part under the Nevada Medicaid program.

663.   Defendants violated N.R.S. § 422.560 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

664.   Defendants furthermore violated N.R.S. § 357.040(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada from at least 2009 to the present by its violation of federal and state laws, including N.R.S. § 422.560, the Anti-Kickback Act and the Stark Act, as described herein.

665.   The State of Nevada, by and through the Nevada Medicaid program and other health care programs, and unaware of Defendants' fraudulent and illegal

practices, paid the claims submitted by health care providers and third party payers in connection therewith.

666.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Nevada in connection with Defendants' fraudulent and illegal practices.

667.   Had the State of Nevada known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

668.   As a result of Defendants' violations of N.R.S. § 357.040(1) the State of Nevada has been damaged in an amount far in excess or millions of dollars exclusive of interest.

669.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to N.R.S. § 357.080(1) on behalf of themselves and the State of Nevada.

670.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

134

671.   Pursuant to the Nevada False Claims Act, the State of Nevada and Relator are entitled to the following damages as against Defendants:

672.   To the STATE OF NEVADA:

673.   Three times the amount of actual damages which the State of Nevada has sustained as a result of Defendants' fraudulent and illegal practices;

674.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Nevada;

675.   Prejudgment interest; and

676.   All costs incurred in bringing this action.

677.   To RELATOR:

678.   The maximum amount allowed pursuant to N.R.S § 357.210 and/or any other applicable provision of law;

679.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

680.   An award of reasonable attorneys' fees and costs; and

681.   Such further relief as this Court deems equitable and just.

## COUNT XXIX

**(New Hampshire False Claims Act, N.H. Rev. Stat. § 167:61-b *et seq.*)**

682.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

135

683.    Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the New Hampshire. Upon information and belief, Defendants' actions described herein occurred in New Hampshire as well.

684.    This is a qui tam action brought by Relator and State of New Hampshire for treble damages and penalties under New Hampshire False Claims Act, N.H. Rev. Stat. § 167:61-b *et seq.*

685.    N.H. Rev. Stat. § 167:61-b provides liability for any person who—

686.    Knowingly presents, or causes to be presented, to an officer or employee of the department, a false or fraudulent claim for payment or approval.

687.    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the department.

688.    Conspires to defraud the department by getting a false or fraudulent claim allowed or paid.

689.    Defendants violated N.H. Rev. Stat. § 167:61-b and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of New Hampshire from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act as described herein.

690.    The State of New Hampshire, by and through the New Hampshire Medicaid program and other state health care programs, and unaware of Defendants'

136

fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

691.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Hampshire in connection with Defendants' fraudulent and illegal practices.

692.    Had the State of New Hampshire known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

693.    As a result of Defendants' violations of N.H. Rev. Stat. § 167:61-b the State of New Hampshire has been damaged in an amount far in excess of millions of dollars exclusive of interest.

694.    Relator are private persons with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to N.H. Rev. Stat. § 167:61-c on behalf of themselves and the State of New Hampshire.

695.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of New Hampshire in the operation of its Medicaid program.

696.   Pursuant to the New Hampshire False Claims Act, the State of New Hampshire and Relator are entitled to the following damages as against Defendants:

697.   To the STATE OF NEW HAMPSHIRE:

698.   Three times the amount of actual damages which that State of New Hampshire has sustained as a result of Defendants' fraudulent and illegal practices;

699.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of New Hampshire;

700.   Prejudgment interest; and

701.   All costs incurred in bringing this action.

702.   To RELATOR:

703.   The maximum amount allowed pursuant to N.H. Rev. Stat. § 167:61-e and/or any other applicable provision of law;

704.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

705.   An award of reasonable attorneys' fees and costs; and

706.   Such further relief as this Court deems equitable and just.

## COUNT XXX

**(New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq*.)**

138

707.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

708.    Additionally, Defendants conduct business in the New Jersey. Upon information and belief, Defendants' actions described herein occurred in New Jersey as well.

709.    This is a qui tam action brought by Relator and State of New Jersey for treble damages and penalties under New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.*

710.    N.J.S.A. 2A:32C-3 provides liability for any person who—

711.    Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

712.    Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

713.    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State.

714.    In addition, N.J.S.A. 30:4D-17 prohibits solicitation, offers, or receipt of any kickback, rebate or bribe in connection with the furnishing of items or services for which payment is or may be made in whole or in part under the New Jersey Medicaid program, or the furnishing of items or services whose cost is or may be

139

reported in whole or in part in order to obtain benefits or payments under New Jersey Medicaid.

715.  Defendants violated N.J.S.A. 30:4D-17 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

716.  Defendants furthermore violated N.J.S.A. 2A:32C-3 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada from at least 2009 to the present by its violation of federal and state laws, including N.J.S.A. 30:4D-17, the Anti-Kickback Act and the Stark Act, as described herein.

717.  The State of New Jersey, by and through the New Jersey Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

718.  Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New Jersey in connection with Defendants' fraudulent and illegal practices.

719.  Had the State of New Jersey known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by

140

health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

720.   As a result of Defendants' violations of N.J.S.A. 2A:32C-3 the State of New Jersey has been damaged in an amount far in excess of millions of dollars exclusive of interest.

721.   Relator are private persons with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to N.J.S.A. 2A:32C-5 on behalf of themselves and the State of New Jersey.

722.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

723.   Pursuant to the New Jersey False Claims Act, the State of New Jersey and Relator are entitled to the following damages as against Defendants:

724.   To the STATE OF NEW JERSEY:

725.   Three times the amount of actual damages which that State of New Jersey has sustained as a result of Defendants' fraudulent and illegal practices;

726.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of New Jersey;

727.   Prejudgment interest; and

141

728.   All costs incurred in bringing this action.

729.   To RELATOR:

730.   The maximum amount allowed pursuant to N.J.S.A. 2A:32C-7and/or any other applicable provision of law;

731.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

732.   An award of reasonable attorneys' fees and costs; and

733.   Such further relief as this Court deems equitable and just.

## COUNT XXXI

**(New Mexico Medicaid False Claims Act, and New Mexico Fraud Against Taxpayers Act, N. M. S. A. 1978, § 27-14-1 *et seq.*, and N. M. S. A. 1978, § 44-9-1 *et seq.*)**

734.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

735.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of New Mexico. Upon information and belief, Defendants' actions described herein occurred in the State of New Mexico as well.

736.   This is a qui tam action brought by Relator and the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False

142

Claims Act, N. M. S. A. 1978, § 27-14-1 *et seq.* and the New Mexico Fraud

Against Taxpayers Act, N. M. S. A. 1978, § 44-9-1 *et seq.*

737.   N. M. S. A. 1978, § 27-14-4 provides liability for any person who-

738.   Presents, or causes to be presented, to the state a claim for payment under

the Medicaid program knowing that the person receiving a Medicaid benefit or

payment is not authorized or is not eligible for a benefit under the Medicaid

program;

739.   Makes, uses or causes to be made or used a record or statement to obtain a

false or fraudulent claim under the Medicaid program paid for or approved by the

state knowing such record or statement is false;

740.   Conspires to defraud the state by getting a claim allowed or paid under the

Medicaid program knowing that such claim is false or fraudulent.

741.   N.M.S.A. 1978 § 44-9-3 provides liability for any person who-

742.   knowingly presents, or causes to be presented, to an employee, officer or

agent of the state or to a contractor, grantee or other recipient of state funds a false

or fraudulent claim for payment or approval;

743.   knowingly makes or uses, or causes to be made or used, a false, misleading

or fraudulent record or statement to obtain or support the approval of or the

payment on a false or fraudulent claim;

143

744.   conspires to defraud the state by obtaining approval or payment on a false or fraudulent claim;

745.   conspires to make, use or cause to be made or used, a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state.

746.   Defendants violated N. M. S. A. 1978, § 27-14-4 and N.M.S.A. 1978 § 44-9-3 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

747.   Defendants furthermore violated N. M. S. A. 1978, § 27-14-4 and N.M.S.A. 1978 § 44-9-3 and knowingly caused thousands of false claims to be made, used and presented to the State of New Mexico from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and Stark Act, as described herein.

748.   The State of New Mexico, by and through the State of New Mexico Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

749.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and

144

belief, also an express condition of payment of claims submitted to the State of New Mexico in connection with Defendants' fraudulent and illegal practices.

750.   Had the State of New Mexico known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

751.   As a result of Defendants' violations of N. M. S. A. 1978, § 27-14-4 and N.M.S.A. 1978 § 44-9-3 the State of New Mexico has been damaged in an amount far in excess of millions of dollars exclusive of interest.

752.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to N. M. S. A. 1978, § 27-14-7 and N. M. S. A. 1978, § 44-9-5 on behalf of themselves and the State of New Mexico.

753.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

754.   Pursuant to the New Mexico Medicaid False Claims Act and the New Mexico Fraud Against Taxpayers Act, the State of New Mexico and Relator are entitled to the following damages as against Defendants:

755.   To the STATE OF NEW MEXICO:

756.   Three times the amount of actual damages which the State of New Mexico has sustained as a result of Defendants' fraudulent and illegal practices;

757.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of New Mexico;

758.   Prejudgment interest; and

759.   All costs incurred in bringing this action.

760.   To RELATOR:

761.   The maximum amount allowed pursuant to N. M. S. A. 1978, § 27-14-9 and N. M. S. A. 1978, § 44-9-7 and /or any other applicable provision of law;

762.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

763.   An award of reasonable attorneys' fees and costs; and

764.   Such further relief as this court deems equitable and just.

## COUNT XXXII

**(New York False Claims Act, N.Y. State Fin. Law § 187 *et seq*.)**

765.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

766.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business

146

in the New York. Upon information and belief, Defendants' actions described herein occurred in New York as well.

767.   This is a qui tam action brought by Relator and State of New York for treble damages and penalties under New York False Claims Act, N.Y. State Finance Law § 187 *et seq.*

768.   N.Y. State Finance Law § 189 provides liability for any person who—

769.   Knowingly presents, or causes to be presented, to any employee, officer or agent of the state or a local government, a false or fraudulent claim for payment or approval;

770.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government;

771.   Conspires to defraud the state or a local government by getting a false or fraudulent claim allowed or paid.

772.   Defendants violated § 189 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

773.   Defendants furthermore violated § 189 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Nevada from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act, as described herein.

147

774.   The State of New York, by and through the New York Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

775.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendants' fraudulent and illegal practices.

776.   Had the State of New York known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

777.   As a result of Defendants' violations of § 189 the State of New York has been damaged in an amount far in excess of millions of dollars exclusive of interest.

778.   Relator are private persons with direct and independent knowledge of the allegations of the Compliant, who have brought this action pursuant to N.Y. State Finance Law § 190(2) on behalf of themselves and the State of New York.

779.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon that exact same facts as the federal claim, and

merely asserts separate damage to the State of New York in the operation of its Medicaid program.

780.   Pursuant to the New York False Claims Act, the State of New York and Relator are entitled to the following damages as against Defendants:

781.   To the STATE OF NEW YORK:

782.   Three times the amount of actual damages which that State of New York has sustained as a result of Defendants' fraudulent and illegal practices;

783.   A civil penalty of not less than $6,000 and not more than $12,000 for each false claim which Defendants caused to be presented to the State of New York;

784.   Prejudgment interest; and

785.   All costs incurred in bringing this action.

786.   To RELATOR:

787.   The maximum amount allowed pursuant to N.Y. State Finance Law § 190(6) and/or any other applicable provision of law;

788.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

789.   An award of reasonable attorneys' fees and costs; and

790.   Such further relief as this Court deems equitable and just.

## COUNT XXXIII

**(North Carolina False Claims Act, North Carolina General Statutes § 51-1-605 *et seq*.)**

791.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

792.    Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of North Carolina. Upon information and belief, Defendants' actions described herein occurred in the State of North Carolina as well.

793.    This is a qui tam action brought by Relator and the State of North Carolina to recover treble damages and civil penalties under the North Carolina False Claims Act, North Carolina General Statutes § 51-1-605 *et seq*.

794.    North Carolina General Statutes § 51-1-607 provides liability for any person who-

795.    Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval

796.    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

797.    Conspires to commit a violation of subdivisions of this section.

798.   Defendants violated North Carolina General Statutes § 51-1-607 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

799.   Defendants furthermore violated North Carolina General Statutes § 51-1-607 and knowingly caused thousands of false claims to be made, used and presented to the State of North Carolina from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

800.   The State of North Carolina, by and through the State of North Carolina Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

801.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of North Carolina in connection with Defendants' fraudulent and illegal practices.

802.   Had the State of North Carolina known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

151

803.   As a result of Defendants' violations of North Carolina General Statutes § 51-1-607 the State of North Carolina has been damaged in an amount far in excess of millions of dollars exclusive of interest.

804.   Relator have direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to North Carolina General Statutes § 51-1-608 on behalf of themselves and the State of North Carolina.

805.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of North Carolina in the operation of its Medicaid program.

806.   Pursuant to the North Carolina False Claims Act, the State of North Carolina and Relator are entitled to the following damages as against Defendants:

807.   To the STATE OF NORTH CAROLINA:

808.   Three times the amount of actual damages which the State of North Carolina has sustained as a result of Defendants' fraudulent and illegal practices;

809.   A civil penalty of not less than $5,500, and not more than $11,000 for each false claim which Defendants caused to be presented to the State of North Carolina;

810.   Prejudgment interest; and

811.   All costs incurred in bringing this action.

152

812.   To RELATOR:

813.   The maximum amount allowed pursuant to North Carolina General Statutes § 51-1-610 and /or any other applicable provision of law;

814.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

815.   An award of reasonable attorneys' fees and costs; and

816.   Such further relief as this court deems equitable and just.

## COUNT XXXIV

**(Oklahoma Medicaid False Claims Act, 63 Okl. St. Ann. § 5053 *et seq.*)**

817.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

818.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Oklahoma. Upon information and belief, Defendants' actions described herein occurred in the State of Oklahoma as well.

819.   This is a qui tam action brought by Relator and the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, 63 Okl. St. Ann. § 5053 *et seq.*

820.   63 Okl. St. Ann. § 5053.1 provides liability for any person who-

153

821.    Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

822.    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

823.    Conspires to defraud the state by getting a false or fraudulent claim allowed or paid.

824.    In addition, 56 Okl. St. Ann. § 1005 prohibits solicitation or acceptance of a benefit, pecuniary benefit, or kickback in connection with goods or services paid or claimed by a provider to be payable by the Oklahoma Medicaid Program.

825.    Defendants violated 56 Okl. St. Ann. § 1005 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

826.    Defendants furthermore violated 63 Okl. St. Ann. § 5053.1 and knowingly caused thousands of false claims to be made, used and presented to the State of Oklahoma from at least 2009 to the present by its violation of federal and state laws, including 56 Okl. St. Ann. § 1005, the Anti-Kickback Act, and Stark Act, as described herein.

827.    The State of Oklahoma, by and through the State of Oklahoma Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

154

828. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Oklahoma in connection with Defendants' fraudulent and illegal practices.

829. Had the State of Oklahoma known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

830. As a result of Defendants' violations of 63 Okl. St. Ann. § 5053.1 the State of Oklahoma has been damaged in an amount far in excess of millions of dollars exclusive of interest.

831. Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to 63 Okl. St. Ann. § 5053.2(B) on behalf of themselves and the State of Oklahoma.

832. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

833. Pursuant to the Oklahoma Medicaid False Claims Act, the State of Oklahoma and Relator are entitled to the following damages as against Defendants:

155

834.   To the STATE OF OKLAHOMA:

835.   Three times the amount of actual damages which the State of Oklahoma has sustained as a result of Defendants' fraudulent and illegal practices;

836.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Oklahoma;

837.   Prejudgment interest; and

838.   All costs incurred in bringing this action.

839.   To RELATOR:

840.   The maximum amount allowed pursuant 63 Okl. St. Ann. § 5053.4 and /or any other applicable provision of law;

841.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

842.   An award of reasonable attorneys' fees and costs; and

843.   Such further relief as this court deems equitable and just.

## COUNT XXXV

**(Rhode Island False Claims Act, Gen. Laws 1956, § 9-1.1-1 *et seq.*)**

844.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

845.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business

in the State of Rhode Island. Upon information and belief, Defendants' actions described herein occurred in the State of Rhode Island as well.

846.   This is a qui tam action brought by Relator and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island False Claims Act, Gen. Laws 1956, § 9-1.1-1 *et seq.*

847.   Gen. Laws 1956, § 9-1.1-3 provides liability for any person who-

848.   knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

849.   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

850.   conspires to defraud the state by getting a false or fraudulent claim allowed or paid.

851.   In addition, Gen. Laws 1956, § 40-8.2-3 prohibits the solicitation, receipt, offer, or payment of any remuneration, including any kickback, bribe, or rebate, directly or indirectly, in cash or in kind, to induce referrals from or to any person in return for furnishing of services or merchandise or in return for referring an individual to a person for the furnishing of any services or merchandise for which payment may be made, in whole or in part, under the Rhode Island Medicaid program.

157

852.   Defendants violated Gen. Laws 1956, § 40-8.2-3 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

853.   Defendants furthermore violated Gen. Laws 1956, § 9-1.1-3 and knowingly caused thousands of false claims to be made, used and presented to the State of Rhode Island from at least 2009 to the present by its violation of federal and state laws, including Gen. Laws 1956, § 40-8.2-3, the Anti-Kickback Act, and Stark Act, as described herein.

854.   The State of Rhode Island, by and through the State of Rhode Island Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

855.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Rhode Island in connection with Defendants' fraudulent and illegal practices.

856.   Had the State of Rhode Island known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

158

857.   As a result of Defendants' violations of Gen. Laws 1956, § 9-1.1-3 the State of Rhode Island has been damaged in an amount far in excess of millions of dollars exclusive of interest.

858.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Gen. Laws 1956, § 9-1.1-4(b) on behalf of themselves and the State of Rhode Island.

859.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

860.   Pursuant to the Rhode Island False Claims Act, the State of Rhode Island and Relator are entitled to the following damages as against Defendants:

861.   To the STATE OF RHODE ISLAND:

862.   Three times the amount of actual damages which the State of Rhode Island has sustained as a result of Defendants' fraudulent and illegal practices;

863.   A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the State of Rhode Island;

864.   Prejudgment interest; and

865.   All costs incurred in bringing this action.

866.   To RELATOR:

867.   The maximum amount allowed pursuant Gen. Laws 1956, § 9-1.1-4(d) and /or any other applicable provision of law;

868.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

869.   An award of reasonable attorneys' fees and costs; and

870.   Such further relief as this court deems equitable and just.

## COUNT XXXVI

**(Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq*.)**

871.   Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

872.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Tennessee. Upon information and belief, Defendants' actions described herein occurred in Tennessee as well.

873.   This is a qui tam action brought by Relator and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq*.

874.   Section 71-5-182(a)(1) provides liability for any person who—

875.   Presents, or causes to be presented to the state, a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

876.   Makes or uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for and approved by the state knowing such record or statement is false;

877.   Conspires to defraud the State by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

878.   Defendants violated Tenn. Code Ann. § 71-5-182(a)(1) and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Tennessee from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act and the Stark Act, as described herein.

879.   The State of Tennessee, by and through the Tennessee Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

880.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Tennessee in connection with Defendants' fraudulent and illegal practices.

881.   Had the State of Tennessee known that Defendants violated the federal and state laws cited herein, it would not have paid the claims submitted by health care

providers and third party payers in connection with Defendants' fraudulent and illegal practices.

882.   As a result of Defendants' violations of Tenn. Code Ann. § 71-5-182(a)(1), the State of Tennessee has been damaged in an amount far in excess of millions of dollars exclusive of interest.

883.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Tenn. Code Ann. § 71-5-183(a)(1) on behalf of themselves and the State of Tennessee.

884.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

885.   Pursuant to the Tennessee Medicaid False Claims Act, the State of Tennessee and Relator are entitled to the following damages as against Defendants:

886.   To the STATE OF TENNESSEE:

887.   Three times the amount of actual damages which the State of Tennessee has sustained as a result of Defendants' fraudulent and illegal practices;

888.   A civil penalty of not less than $5,000 and not more than $25,000 for each false claim which Defendants caused to be presented to the State of Tennessee;

889.   Prejudgment interest; and

890.   All costs incurred in bringing this action.

891.   To RELATOR:

892.   The maximum amount allowed to Tenn. Code Ann. §71-5-183(d) and/or any other applicable provision of law;

893.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

894.   An award of reasonable attorneys' fees and costs; and

895.   Such further relief as this Court deems equitable and just.

## COUNT XXXVII

**(Texas False Claims Act, V.T.C.A. Hum. Res. Code § 36.001 *et seq*.)**

896.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

897.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Texas. Defendants' actions described herein occurred in Texas as well.

898.   This is a qui tam action brought by Relator and the State of Texas to recover double damages and civil penalties under the Texas False Claims Act, V.T.C.A. Hum. Res. Code § 36.001 *et seq.*

163

899.   V.T.C.A. Hum. Res. Code § 36.002, in relevant part, provides liability for any person who—

900.   knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

901.   knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

902.   knowingly applies for and receives a benefit or payment on behalf of another person under the Medicaid program and converts any part of the benefit or payment to a use other than for the benefit of the person on whose behalf it was received;

903.   except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

164

904.   except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

905.   knowingly enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent;

906.   knowingly makes, uses, or causes the making or use of a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to this state under the Medicaid program.

907.   Defendants violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused hundreds of thousands of false claims to be made, used and presented to the State of Texas from at least 2009 to the present by its violation of federal and state laws, including, the Anti-Kickback Act and the Stark Act, as described herein.

908.   The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third party payers in connection therewith.

165

909.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendants' fraudulent and illegal practices.

910.    Had the State of Texas known that Defendants were violating the federal and state laws cited herein, it wound not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

911.    As a result of Defendants' violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged in an amount far in excess of millions of dollars exclusive of interest.

912.    Defendants did not, within 30 days after it first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

913.    Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of themselves and the State of Texas.

914.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

915.   Pursuant to the Texas False Claims Act, the State of Texas and Relator are entitled to the following damages as against Defendants:

916.   To the STATE OF TEXAS:

917.   Damages at two times the value of any payment or monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful acts set forth above, as provided by the Texas Human Resources Code § 36.052(a)(3) & (4), and

918.   A civil penalty of: (1) Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $15,000 or the maximum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $15,000, for each unlawful act committed by the person that results in injury to an elderly person, as defined by Section 48.002(a)(1), a disabled person, as defined by Section 48.002(a)(8)(A), or a person younger than 18 years of age; or (2) Not less than $5,500 or the minimum amount imposed as provided by 31 U.S.C. Section 3729(a), if that amount exceeds $5,500, and not more than $11,000 or the maximum amount imposed as provided by 31

167

U.S.C. Section 3729(a), if that amount exceeds $11,000, for each unlawful act committed by the person that does not result in injury to a person described by Paragraph (A)

919.   Pre- and post-judgment interest, Tex. Hum. Res. Code § 36.052(a)(2),

920.   To RELATOR:

921.   The maximum amount allowed pursuant to V.T.C.A. Hum Res. Code § 36.110(a), and/or any other applicable provision of law;

922.   Reimbursement for reasonable expenses and costs which Relator incurred in connection with this action, Tex Hum Res. Code §§ 36.007 & 36.110(c);

923.   Reasonable attorneys' fees which Relator necessarily incurred in bringing and pressing this case, Tex Hum Res. Code §§ 36.007 & 36.110(c); and

924.   Such further relief as this Court deems equitable and just.

## COUNT XXXVIII

### (Vermont False Claims Act, 32 V.S.A. 630 *et seq.*)

925.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

926.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business in the State of Vermont. Upon information and belief, Defendants' actions described herein occurred in the State of Vermont as well.

927.   This is a qui tam action brought by Relator and the State of Vermont to recover treble damages and civil penalties under the Vermont False Claims Act, 32 V.S.A. 630 *et seq.*

928.   32 V.S.A. 631 provides liability for any person who shall-

929.   Knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval.

930.   Knowingly make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim.

931.   Conspires to commit a violation of this subsection.

932.   Defendants violated 32 V.S.A. 630 *et seq.* from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

933.   Defendants furthermore violated 32 V.S.A. 630 *et seq.* and knowingly caused thousands of false claims to be made, used and presented to the State of Vermont from at least 2009 to the present by its violation of federal and state laws, including 32 V.S.A. 630 *et seq.*, the Anti-Kickback Act, and Stark Act, as described herein.

934.   The State of Vermont, by and through the State of Vermont Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

935. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Vermont in connection with Defendants' fraudulent and illegal practices.

936. Had the State of Vermont known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

937. As a result of Defendants' violations of 32 V.S.A. 630 *et seq.* the State of Vermont has been damaged in an amount far in excess of millions of dollars exclusive of interest.

938. Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to 32 V.S.A. 632(b)(1) on behalf of themselves and the State of Vermont.

939. This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Vermont in the operation of its Medicaid program.

940. Pursuant to the Vermont False Claims Act, the State of Vermont and Relator are entitled to the following damages as against Defendants:

170

941.   To the STATE OF VERMONT:

942.   Three times the amount of actual damages which the State of Vermont has sustained as a result of Defendants' fraudulent and illegal practices;

943.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Vermont;

944.   Prejudgment interest; and

945.   All costs incurred in bringing this action.

946.   To RELATOR:

947.   The maximum amount allowed pursuant 32 V.S.A. 635(b) and /or any other applicable provision of law;

948.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

949.   An award of reasonable attorneys' fees and costs; and

950.   Such further relief as this court deems equitable and just.

## COUNT XXXIX

**(Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.1***et seq.***)**

951.    Relator re-allege and incorporate the allegations above as if fully set for herein and further alleges as follows.

952.   Additionally, Relator state that the course of conduct described in this Complaint was a nationwide practice of Defendants. Defendants conduct business

171

in the Commonwealth of Virginia. Upon information and belief, Defendants'

actions described herein occurred in the Commonwealth of Virginia as well.

953.   This is a qui tam action brought by Relator and the Commonwealth of

Virginia to recover treble damages and civil penalties under the Virginia Fraud

Against Taxpayers Act, Va. Code Ann. § 8.01-216.1 *et seq*.

954.   Va. Code Ann. § 8.01-216.3 provides liability for any person who-

955.   Knowingly presents, or causes to be presented, to an officer or employee of

the Commonwealth a false or fraudulent claim for payment or approval;

956.   Knowingly makes, uses, or causes to be made or used, a false record or

statement to get a false or fraudulent claim paid or approved by the

Commonwealth

957.   Conspires to defraud the Commonwealth by getting a false or fraudulent

claim allowed or paid.

958.   Defendants violated Va. Code Ann. § 8.01-216.3 from at least 2009 to the

present by engaging in the fraudulent and illegal practices described herein.

959.   Defendants furthermore violated Va. Code Ann. § 8.01-216.3 and knowingly

caused thousands of false claims to be made, used and presented to the

Commonwealth of Virginia from at least 2009 to the present by its violation of

federal and state laws, including the Anti-Kickback Act and Stark Act, as

described herein.

960.   The Commonwealth of Virginia, by and through the Commonwealth of Virginia Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

961.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Virginia in connection with Defendants' fraudulent and illegal practices.

962.   Had the Commonwealth of Virginia known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

963.   As a result of Defendants' violations of Va. Code Ann. § 8.01-216.3 the Commonwealth of Virginia has been damaged in an amount far in excess of millions of dollars exclusive of interest.

964.   Relator are private persons with direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Va. Code Ann. § 8.01-216.5(A) on behalf of himself and the Commonwealth of Virginia

965.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the Commonwealth of Virginia in the operation of its Medicaid program.

966.   Pursuant to the Virginia Fraud Against Taxpayers Act, the Commonwealth of Virginia and Relator are entitled to the following damages as against Defendants:

967.   To the COMMONWEALTH OF VIRGINIA:

968.   Three times the amount of actual damages which the Commonwealth of Virginia has sustained as a result of Defendants' fraudulent and illegal practices;

969.   A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the Commonwealth of Virginia;

970.   Prejudgment interest; and

971.   All costs incurred in bringing this action.

972.   To RELATOR:

973.   The maximum amount allowed pursuant to Va. Code Ann. § 8.01-216.7 and /or any other applicable provision of law;

974.   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

174

975.   An award of reasonable attorneys' fees and costs; and

976.   Such further relief as this court deems equitable and just.

## COUNT XL

**(Washington False Claims Act, Washington Revised Code § 74 66-005 *et seq.*)**

977.    Relator re-allege and incorporate the allegations above as if fully set for

herein and further alleges as follows.

978.   Additionally, Relator state that the course of conduct described in this

Complaint was a nationwide practice of Defendants. Defendants conduct business

in the State of Washington. Upon information and belief, Defendants' actions

described herein occurred in the State of Washington as well.

979.   This is a qui tam action brought by Relator and the State of Washington to

recover treble damages and civil penalties under the Washington False Claims Act,

Washington Revised Code § 74 66-005 *et seq.*

980.   Washington Revised Code § 74 66-020 provides liability for any person

who-

981.   Knowingly presents, or causes to be presented, a false or fraudulent claim

for payment or approval;

982.   Knowingly makes, uses, or causes to be made or used, a false record or

statement material to a false or fraudulent claim;

983.   Conspires to commit one or more of the violations in this subsection.

175

984.   Defendants violated Washington Revised Code § 74 66-020 from at least 2009 to the present by engaging in the fraudulent and illegal practices described herein.

985.   Defendants furthermore violated Washington Revised Code § 74 66-020 and knowingly caused thousands of false claims to be made, used and presented to the State of Washington from at least 2009 to the present by its violation of federal and state laws, including the Anti-Kickback Act, and the Stark Act, as described herein.

986.   The State of Washington, by and through the State of Washington Medicaid program and other state health care programs, and unaware of Defendants' fraudulent and illegal practices, paid the claims submitted by health care providers and third payers in connection therewith.

987.   Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Washington in connection with Defendants' fraudulent and illegal practices.

988.   Had the State of Washington known that Defendants were violating the federal and state laws cited herein, it would not have paid the claims submitted by health care providers and third party payers in connection with Defendants' fraudulent and illegal practices.

176

989.   As a result of Defendants' violations of Washington Revised Code § 74 66-020 the State of Washington has been damaged in an amount far in excess of millions of dollars exclusive of interest.

990.   Relator have direct and independent knowledge of the allegations of this Complaint, who have brought this action pursuant to Washington Revised Code § 74 66-050 on behalf of themselves and the State of Washington.

991.   This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Washington in the operation of its Medicaid program.

992.   Pursuant to the Washington False Claims Act, the State of Washington and Relator are entitled to the following damages as against Defendants:

993.   To the STATE OF WASHINGTON:

994.   Three times the amount of actual damages which the State of Washington has sustained as a result of Defendants' fraudulent and illegal practices;

995.   A civil penalty of not less than $5,500, and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Washington;

996.   Prejudgment interest; and

997.   All costs incurred in bringing this action.

998.   To RELATOR:

177

999.   The maximum amount allowed pursuant to Washington Revised Code § 74

66-070 and /or any other applicable provision of law;

1000. Reimbursement for reasonable expenses which Relator incurred in

connection with this action;

1001. An award of reasonable attorneys' fees and costs; and

1002. Such further relief as this court deems equitable and just.

### REQUESTS FOR RELIEF

WHEREFORE, the Relator, on behalf of the UNITED STATES, demands that

judgment be entered in its favor and against Defendants: BIOTRONIK INC.,

CEDARS-SINAI MEDICAL CENTER, and DR. JEFFREY GOODMAN, with

judgment to be entered against each DEFENDANT for the amount of damages to

the States' Medicaid Programs arising (a) from claims for each DEFENDANTS'

respective specified devices and (b) jointly and severally with such other

Defendants for damages as set forth in each paragraph above and herein, as

follows:

1.     On Count I (False Claims Act; Causing Presentation of False Claims) for

triple the amount of the UNITED STATES' damages, plus civil penalties of the

maximum amount allowed by law be imposed for each and every false claim that

Defendants presented to the UNITED STATES;

178

2.      On Count II (False Claims Act; Causing False Statements to Be Used to Get False Claims Paid or Approved by The GOVERNMENT) for triple the amount of UNITED STATES' damages plus civil penalties of plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

3.      On Count III (False Claims Act; Causing False Statements to Be Used to Conceal an Obligation to Pay Money to The GOVERNMENT) for triple amount of the UNITES STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

4.      On Count IV (False Claims Act; Causing Presentation of False and Fraudulent Claims; Illegal Remuneration) for triple amount of the UNITES STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

5.      On Count V (False Claims Act; Causing A False Record or Statement to Be Made or Used to Get a False or Fraudulent Claim Paid or Approved by The Government; Prohibited Referrals, Claims, and Compensation Arrangements) for triple amount of the UNITES STATES' damages plus civil penalties of the

maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES;

6.     On Count VI (False Claims Act; Conspiring to Defraud the Government by Getting a False or Fraudulent Claim Allowed or Paid) for triple amount of the UNITES STATES' damages plus civil penalties of the maximum amount allowed by law be imposed for each and every false claim that Defendants presented to the UNITED STATES.

Further, the Relator, on its behalf, requests that it receive the maximum amount as permitted by the law, of the proceeds of this action or settlement of this action collected by the UNITED STATES, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. The Relator requests that its award be based upon the total value recovered, both tangible and intangible, including any amounts received from individuals or entities not parties to this action.

## DEMAND FOR JURY TRIAL

Relator hereby demands a jury trial.


Dated:  February 21, 2017


Respectfully submitted,


**UNITED STATES OF AMERICA, ex rel.**

**Relator**




By: _____

Mychal Wilson SBN 236189
The Law Office of Mychal Wilson
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Telephone: (424) 252-4232
Facsimile: (310) 424-7116

*Attorney for Relator The Sam Jones Company, LLC*

181

## CERTIFICATION THAT VENUE IS PROPER

Below-signed counsel hereby endorses and certify that this case is properly

assigned to the Central District of California.


Dated:  February 21, 2017


By: _____

Mychal Wilson SBN 236189
THE LAW OFFICE OF MYCHAL WILSON
Mychal Wilson SBN #236189
The Law Office of Mychal Wilson
401 Wilshire Blvd., 12th Floor
Santa Monica, CA 90401
Telephone: (424) 252-4232
Facsimile: (310) 424-7116
E-mail:  mw@mychalwilsonesq.com


*Attorney for Relator The Sam Jones Company, LLC*